# Western Assurance Company *v.* Hall Brothers.

## *Action on Policy of Fire Insurance.*

1. *Arbitration; selection and interest of arbitrators.*—Where, under the terms of a policy of fire insurance, the assured selects one of his clerks as an arbitrator, and the insurer, with knowledge of the facts, makes no objection to him, this does not authorize the insurer to select on his part, a partizan of his, or interested person, and a selection of such person by the insurer, justifies the insured in refusing to proceed with the arbitration unless a competent person is appointed in his place.

2. *Insurance; provisions for arbitration.*—The provision for arbitration, in a policy of insurance, is collateral; and, if it fails of accomplishment without fault of the parties, they are relegated to their legal rights independent thereof.

3. *Same; same; bad faith in selection.*—If either party to an agreement for arbitration, in bad faith, refuses to proceed therein, or insists on the selection of an improper arbitrator, or unduly interferes with an arbitrator after appointment, the other party is thereby absolved from further obligation to arbitrate.

4. *Same; relevancy of agreement of arbitration variant from the agreement contained in policy.*—Where, in an action upon a policy of fire insurance, a plea sets up an agreement for arbitration "In accordance with the provisions and stipulations of the policy," an agreement which does not follow, and is not in accordance with the provisions of the policy, is inadmissible in evidence thereunder.

APPEAL from Madison Circuit Court.

Tried before the Hon. OSCEOLA KYLE.

This was an action upon a policy of fire insurance, brought by the appellees against the appellant. The necessary facts are sufficiently shown by the opinion. There was verdict and judgment for the plaintiffs, from which the defendant took his appeal.

LONDON & LONDON and R. W. WALKER, for appellant, cited.—*Wheeling Gas Co. v. Wheeling,* 5 W. Va. 448; *Morse on Arbitration and Award,* 102; 3 Cyc. 618; *Hamilton v. Home Ins. Co.,* 137 U. S. 370; *Wicking v. Ins. Co.,* 77 N. W. Rep. 275; *Western Assur. Co. v. Hall & Bro.,* 120 Ala. 557.

COOPER & FOSTER, *contra,* cited.—133 Ala. 639; *Ostrander on Fire Ins.* (2nd ed.) 266; *Conn. F. Ins. Co. v. Hamilton,* 59 Fed. Rep. 262; *Harrison v. German-American F. Ins. Co.,* 67 Fed. 577; *Hamilton v. Phoenix Ins. Co.,* 61 Fed. 379; *Hamilton v. Conn. F. Ins. Co.,* 46 Fed. 42; 13 A. & E. Enc. Law. 362; 4 Joyce on Ins., Sec. 3245; *Adams v. N. Y. Bowery Ins. Co.,* 85 Iowa 6; *Summerville v. N. British & Mcr. Ins. Co.,* 62 Fed. 249; *Ins. Co. v. Stocks,* 36 N. E. Rep. 408.

HARALSON, J.—1. The pleadings in the case were settled in the former three appeals, and, when the cause was returned to the circuit court on the last appeal, (133 Ala. 637), the defendant filed a new plea, numbered 9, in which the defendant set up that "A disagreement as to the amount of loss or damage having arisen between the assured and this defendant, the defendant demanded the selection of appraisers as provided for in said policy; that thereupon, the plaintiffs selected as their appraiser one J. T. White, who was then an employee or clerk of the plaintiffs and notified the defendant of the selection of said White and informed the defendant that said White was their clerk or employee and thereupon defendant selected as its appraiser one J. C. Lacoste, a citizen and resident of the city of Birmingham, and said appraisers selected William Myers, a citizen and resident of the city of Huntsville, Alabama, as the umpire, as provided for by the terms of the policy. And defendant says that the plaintiffs, having selected their said clerk or employee as their appraiser, cannot be heard to complain of the selection by the defendant of said Lacoste; and said plaintiffs wrongfully complaining that said Lacoste was a partisan of the defendant,

wrongfully prevented said appraisers and umpire or a majority thereof from making an award," etc.

The plaintiffs demurred to this plea, on many grounds, among them, (3rd), "It appears from said plea that defendant knew that said White was a clerk or employee of the plaintiffs at the time said arbitration agreement was entered into." (4th), "It does not appear from said plea that J. C. Lacoste, the appraiser selected by the defendant, was a competent and disinterested appraiser." (10th), "The selection by plaintiffs of a person to act as appraiser, who was in their employ, does not estop them from objecting to the appraiser selected by defendant." (11th), "The fact that plaintiffs with the knowledge and consent of defendant selected as an appraiser a person in their employ would not estop them to object to an incompetent and interested appraiser selected by the defendant."

2. The reasons why said plea is not good, can scarcely be better stated than in the grounds thereto set up in demurrer. While White was a clerk of plaintiffs, that fact was made known to defendant when plaintiffs nominated him for an arbitrator. The defendant made no objection to him on that account, as it might have done, but proceeded to select its arbitrator. This was a waiver of any objection it might have raised to White, on account of his not being disinterested, and it did not authorize defendant to nominate an interested and incompetent arbitrator, and conceal that fact from plaintiffs;—3 Cyc., 617, 619. As soon as plaintiffs ascertained that Lacoste was not disinterested, they had a right to repudiate the nomination, and insist that a disinterested person should be selected in his place. To hold otherwise, would authorize the defendant to take an undue advantage of the plaintiffs, in the matter of the selection of disinterested arbitrators, as provided by the terms of the policy.

3. The plaintiffs filed replications to defendant's pleas, 5, 7 and 8. These pleas set up in substance the arbitration provisions of the policy, and that plaintiffs broke up the arbitration after it was entered upon. The 3rd replication set up, that "The said appraisers and

said umpire, or one or more of them, (referred to in said pleas) were not impartial and disinterested, and were not competent to serve in the capacity for which they were selected, which was unknown to plaintiffs at the time said agreement of arbitration was entered into, and, immediately after the ascertainment of said facts, plaintiffs demanded of said defendant the selection of disinterested and competent appraisers, in accordance with the terms of said policy, which demand said defendant refused." If these facts were true, they furnished a complete answer to said pleas, and the demurrer to the replication to them was properly overruled.—*Hall v. Western Assurance Co.*, 120 Ala. 547; Ib. 133 Ala. 637; Ib. 112 Ala. 318.

From what has been said, it will appear that the demurrer to replication 18 to the 8th plea, was properly overruled.

4. The policy provides, that the company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, with proper deduction for depreciation however caused. "Said ascertainment or estimate shall be made by the insured and the company, or, if they differ, then by appraisers, as hereinafter provided, and the amount of loss or damage having been thus determined," it shall be paid in 60 days, etc.

It is again provided, that "In the event of disagreement as to the amount of the loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss." "No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

It was held on a former appeal, (120 Ala. 547), that "The provision for arbitration is collateral to the con-

[Western Assurance Company v. Hall Brothers.]

tract for insurance: and, if it fails of accomplishment without fault of parties ,they are relegated to their legal rights independent thereof. . * * * After disagreement as to the loss and a request by either party for arbitration, both parties were under the duty to act in good faith, to have the loss ascertained as provided by the policy; and if either in bad faith prevented such ascertainment by refusing to proceed, or by insisting on the selection of improper arbitrators, or by undue interference with them after their selection, the other party is thereby absolved from further obligation to arbitrate."

In the 5th, 7th and 8th pleas it was alleged, in substance, that an arbitration was entered upon in accordance with the provisions of the policy. It is insisted by the plaintiffs, that the agreement to arbitrate is no more than an agreement for a common law arbitration, and not for one according to the stipulations and provisions of the policy, and that said agreement was immaterial as tending to show a submission to arbitrators "In accordance with the provisions and stipulations of the policy." The agreement was signed by the plaintiffs, the defendant company and three other insurance companies. The plant and certain described personal property of plaintiffs were insured in the defendant company, and the plant alone was insured in the three other companies. It was not shown that the policies, in these other companies which signed the agreement, contained provisions for arbitration similar to the ones in the plaintiffs' policy. This insistence of the plaintiffs is based, as contended, on the facts that "The *policy* provides for an arbitration between the plaintiffs and the defendant company; (that) the *agreement* provides for an arbitration between plaintiffs and four insurance companies, three of which are not mentioned in the policy sued on; (that) the policy provides for two appraisers, one each, to be selected by plaintiffs and defendant, (and that) one of the appraisers named in the agreement is shown to be the joint selection of four insurance companies; (that) the policy provides for an award covering the entire amount of the loss, such as would be binding upon both the parties, as to the amount recoverable; (that) the agreement stipu-

lated for the appraisal of the loss and damage to a few specified articles damaged; (that) the policy provides for an arbitration to ascertain the *amount* of loss or damage only, (and) by the terms of the agreement, the appraisers are further required, 'To make an estimate of the actual cash cost of replacing or repairing the same;' (that) the policy only contemplates the settlement of the differences between plaintiff and this defendant; (and that) under the agreement, the appraisers must further adjust and prorate the loss among the several insurers."

From this recital of plaintiffs' contention, all of which is substantially true, in the recitation of facts, it would appear that the arbitration agreement did not follow and was not in accordance with the provisions of the policy for arbitration, and the agreement was, therefore, properly excluded.

It was shown that, on the 3rd of May, 1894, before this suit was commenced on the 11th of June thereafter, the plaintiffs wrote to the adjuster of the company, that they were still willing to agree to any arbitration in accordance with the terms of the policy, insisting that this be done, as one of the arbitrators had declined to serve, to which proposition, it was admitted, defendant did not accede.

After this, the plaintiffs were free to bring this suit, unaffected by said arbitration clause, and recover, if shown to be entitled under the evidence. They introduced their policy of insurance, proved the loss by fire, and the amount of the loss, and this entitled them to the general charge as was given.

Affirmed.

MCCLELLAN, C. J., DOWDELL and DENSON, J.J., concurring.