(160 App. Div. 74)

### J. E. DAVIS MFG. CO. v. STUYVESANT INS. CO. et al.

(Supreme Court, Appellate Division, Third Department. January 7, 1914.)

1. INSURANCE (§ 646*)—PRESUMPTIONS—CORRECTNESS OF AWARD.

It is presumed that an award of appraisers as to the value of insured property destroyed was just and proper.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1668; Dec. Dig. § 646.*]

2. INSURANCE (§ 665*)—FIRE INSURANCE—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence, in an action on a fire policy, *held* to sustain a finding that the purported appraisal of the value of the property was not made fairly and justly, after deliberation and consideration by the appraisers.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

3. INSURANCE (§ 665*) — FIRE INSURANCE — ACTIONS — SUFFICIENCY OF EVIDENCE.

Evidence, in an action on a fire policy, *held* to sustain a finding that insured's sprinkling apparatus was maintained as it existed at the time the policy was taken out.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

4. APPEAL AND ERROR (§ 994*)—PRESUMPTIONS—COMMISSION OF CRIME.

Courts will not presume, upon doubtful evidence in a civil case, that a person deliberately committed perjury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3901–3906; Dec. Dig. § 994.*]

Appeal from Trial Term, Cortland County.

Action by the J. E. Davis Manufacturing Company against the Stuyvesant Insurance Company and others. From a judgment for plaintiff and an order denying a new trial, defendant named appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

White, Cheney, Shinaman & O'Neill, of Syracuse (J. L. Cheney, of Syracuse, of counsel), for appellant.

Davis & Lusk, of Cortland (Clayton R. Lusk, of Cortland, of counsel), for respondent.

WOODWARD, J. This action was brought on the 18th day of October, 1912, to recover on a policy of insurance issued by the defendant insurance company; the complaint demanding judgment in the sum of $2,493.22 by reason of the destruction of the plant of the plaintiff, located in the city of Cortland, by fire on the 5th day of April, 1912. The policy in question was one of a group of policies aggregating $215,750 written by various insurance companies upon the property of the plaintiff, and the particular policy was for the sum of $2,500. The answer admits the writing and delivery of the policy and the fact of the fire, but sets up as an affirmative defense that the fire was caused by the fraudulent acts of the plaintiff; that the policy contained a sprinkler guaranty clause which was violated at the time

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the fire; that there was fraud and misrepresentation on the part of the plaintiff in making up the proofs of loss, and the proceedings following it; and for a partial defense that there was an appraisal and an award, fixing the total loss at $152,625.05, and that the share of the defendant, in case of a recovery, would amount to only $1,768.53. The plaintiff replied to the affirmative defense of appraisal and award, setting up that the same was irregular, improper, and secured by fraud and misrepresentation on the part of the defendant insurance company.

The issues thus presented were tried before a jury, the trial lasting about three weeks, producing a voluminous record, dealing with the facts involved in determining the value of the property destroyed, and resulted in a verdict for the full amount claimed by the plaintiff. A motion for a new trial, upon the usual grounds, was made and denied, and the defendant appeals to this court.

The plant which was destroyed was engaged in the manufacture of piano cases and piano backs, and there was nothing saved with the exception of the boiler house and a small portion of the office equipment and other matters of trifling value, and there was, of course, difficulty in producing high character of evidence of the quantity and value of the materials on hand, which were in various stages of development in the process of manufacture. There is practically no controversy over the valuation of the buildings, or of the machinery; but upon the question of the values to be placed upon the materials, and the quantity thereof, there is a bitter controversy, and upon these depend largely the merits of the case. We are of the opinion, however, that the evidence presented a question for the jury, and that the verdict rests upon a substantial foundation. It is obviously impossible to know exactly the amount of material, and its exact condition of development toward the completed product, where the factory is actively at work, and especially so when the work is interrupted by a fire which utterly consumes all of the materials. To meet this situation, the plaintiff took the original slips containing statements made for the purposes of the annual inventory in January, 1912, and then added to these the amount of purchases since made, deducting the amount of materials involved in the deliveries which had been made down to the time of the fire, and in this manner reached an approximation of the amount of materials destroyed. While this must, of necessity, leave the matter open to a good deal of speculation, a careful analysis of the evidence of all of the parties to the controversy indicates that it has resulted in a verdict which is not far from just and equitable, and the contract of insurance certainly does not contemplate that the insured shall be called upon to suffer the loss which the insurer has agreed to liquidate, simply because the fire has destroyed the possibility of a perfectly accurate proof of each particular item of damage.

The defendant urges as its first point that there was no evidence in the case which would justify the submission to the jury of the question of the validity of the award made by the appraisers appointed under the provisions of the standard policy.

[1] There can be no doubt that the presumption is with the defendant that the award was just and proper; but we are of the opinion

that the evidence discloses a state of facts which made it proper to submit the question involved to the jury. The policy requires that, in the event of a disagreement as to the amount of loss, the "same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss," etc. The evidence discloses that the defendant employed one Thomas Fleming, of Cleveland, Ohio, who appears to have been an expert appraiser, who had been engaged in like work for a period of more than 40 years, and who commanded a salary of $50 per day and his expenses, and the testimony of this witness shows that he practically had no consultation with the appraiser named by the plaintiff as to any of the details of the appraisal. Indeed, it is impossible to read the record and find in it any attempt on the part of the defendant's appraiser to comply with the provisions of the policy, which requires that "the appraisers together shall then estimate and appraise the loss." He seems to have assumed that it was rather beneath his dignity to consult with the young man, a practical manufacturer, selected by the plaintiff, and the evidence fails to disclose a single occasion on which there was anything approximating a discussion of the merits of the questions involved and a fair effort to get together upon an appraisal. For instance, this witness tells us on his examination that he refused to take any account of the estimate of depreciation upon the machinery made by the representative of an appraisal company who had personally examined the machinery with a view to making up his estimate of the value of the plant in the year before the fire, declaring that he thought he could get a better estimate of the value by arbitrarily discounting the value 50 per cent., and his whole attitude was that of one who assumed to know all about the facts without taking the trouble to look into them, while the appraiser appointed in behalf of the plaintiff appears to have stood around and made up a few figures on his own account, which were wholly ignored in the final determination made by the defendant's appraiser and the umpire.

[2] Without going to the extent of suggesting that the evidence warrants a holding that there was trickery used in the selection of the umpire, or that the latter acted in bad faith, we are fully persuaded that the evidence does disclose that there was never any such effort at a fair and impartial appraisal as the standard policy contemplates, and that the jury was fully justified in holding that the plaintiff was not bound by the alleged appraisal and award. The discussion of the conduct of the appraiser in the case of Bradshaw v. Agricultural Ins. Co., 137 N. Y. 137, 143, 32 N. E. 1055, is so applicable to the present situation that it does not seem necessary to repeat the language here, and we conclude that in so far as the first point is concerned the judgment should not be disturbed.

[3] Under the second point it is urged that the insurance was void because of the violation by the plaintiff of the sprinkler warranty clause in the policy. We will assume, without discussion, though without committing ourselves to the proposition, that the plaintiff warranted that it would keep the sprinkling apparatus as it existed at the time of the writing of the insurance in the manner outlined by the policy. That is, the policy provided that the insurance was written upon the basis of the existing sprinkler system, and the insured agreed that: .

"In so far as the sprinkler system and water supply therefor are under control of the assured, due diligence shall be used by the assured to maintain them in complete working order, and that no change will be made in the said system of water supply therefor without the consent of this company in writing."

There is no contention that there was any change in the system. There is some evidence that the supply was turned off at the time of the fire, both in its connection with the city water supply and the auxiliary tank, or that the tank was not supplied with water; but the evidence is by no means conclusive upon this point. There is evidence which is just as consistent with a different conclusion; there is affirmative and undisputed evidence that a gong designed to give warning when the sprinkler system was in operation was ringing for some time after the firemen reached the plaintiff's plant, while there is testimony of a policeman that an employé of the plaintiff turned off the water from the city connection after the fire was under way, explaining that he did so to give a higher pressure upon the mains which were being called upon to supply the hose in fighting the fire. There were some suspicious facts connected with the fire; but there was no such weight of evidence in support of the defendant's theory as to warrant a reversal of the determination made by the jury, even assuming that the burden of proof was upon the plaintiff to show that it had used due diligence in preserving the sprinkler system.

[4] We are equally persuaded that the evidence did not require the jury to find that the plaintiff had been guilty of false swearing in reference to the proof of claim, or other matters, connected with the controversy. It is true that the president of the plaintiff company put a valuation upon some of the materials which seemed high in comparison to some other figures, but a careful analysis of the testimony shows conclusively that that witness was not testifying in reference to the same quality of goods, in the same stage of manufacture, which were involved in the figures which are used in comparison, and courts will not presume upon any doubtful basis that any one has deliberately committed perjury. The evidence shows that the materials as we have already pointed out, were in various stages of development in the manufacture of piano backs, etc., and the value of the lumber involved in their production would depend very largely upon the amount of labor, the waste, etc., which had been added or taken away. It is conceded, of course, that the witness made some mistakes; he admits these when called to his attention, but taking the testimony as a whole, and giving it its proper relation to the cir-

cumstances with which he was dealing, and we are not convinced that there was any intention on the part of the plaintiff to defraud the defendant in any of the matters alleged, and the jury appears to have taken this view of the evidence.

We do not think the evidence warranted the conclusion that the fire was due to any fraudulent act on the part of the plaintiff or its employés, or that the verdict in favor of the plaintiff is against the weight of evidence, or that there is any good reason for disturbing the judgment.

The judgment and order appealed from should be affirmed, with costs. All concur.