CHICAGO, R. I. & P. RY. CO. v. UNION PAC. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1918.)

No. 5022.

1. COURTS ⬅492—EFFECT OF RECEIVERSHIP—JURISDICTION OF COURT OTHER THAN ONE APPOINTING RECEIVER.

That one defendant was under receivership in another federal court at the time the trial court heard the bill of complaint against it and others to enforce an award of arbitrators appointed pursuant to contract, etc., *held* not to deprive the trial court of jurisdiction; it not appearing when complainant filed its claim in the receivership suit.

2. ARBITRATION AND AWARD ⬅12—VALIDITY OF AWARD—WAIVER OF DEFECTS.

Where arbitration was begun under a mutual mistake as to which contract governed, etc., and the parties on discovery furnished the arbitrators the true contract and proceeded, there was a waiver of the defect, and the award was valid.

3. ARBITRATION AND AWARD ⬅4—PARTIES—VALIDITY OF AWARD—RIGHT TO OBJECT.

Where others interested in the result of an arbitration, though not parties, insisted on its validity, defendant, against whom the award was made, cannot attack it because they were not made parties and might have been injured.

4. ARBITRATION AND AWARD ⬅46—DISQUALIFICATION OF ARBITRATOR—WAIVER.

Where defendant proceeded with an arbitration after discovery of facts which showed one of the arbitrators was disqualified, it waived the disqualification, and cannot attack the award on that ground.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. ARBITRATION AND AWARD ☜46—HEARINGS—NOTICE.

Where defendant participated in sending arbitrators the true contract, on discovery of the mistake as to the contract applicable, etc., and submitted other evidence, *held*, the award was not open to attack on the ground the arbitrators failed to give notice and refused to hold further hearing after discovery of the mistake, etc.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Bill by the Union Pacific Railroad Company against the Chicago, Rock Island & Pacific Railway Company and others. From a decree against it, the named defendant appeals. Affirmed.

E. P. Holmes, of Lincoln, Neb. (M. L. Bell, of Chicago, Ill., on the brief), for appellant.

Edson Rich, of Omaha, Neb. (N. H. Loomis, of Omaha, Neb., on the brief), for appellee Union Pac. R. Co.

A. A. McLaughlin, of Omaha, Neb. (Lyle Hubbard and Wymer Dressler, both of Omaha, Neb., on the brief), for appellee Chicago & N. W. Ry. Co.

F. H. Helsell, of Ft. Dodge, Iowa, and William Baird, Edgar A. Baird, and Claire J. Baird, all of Omaha, Neb., for appellee Illinois Cent. R. Co.

Ralph M. Shaw, of Chicago, Ill., and William Baird, of Omaha, Neb., for appellee Chicago Great Western Ry. Co.

B. P. Waggener, of Atchison, Kan., and J. A. C. Kennedy and Yale Holland, both of Omaha, Neb., for appellee Missouri Pac. Ry. Co.

H. H. Field, of Chicago, Ill., and L. F. Crofoot, E. H. Scott, and W. C. Fraser, all of Omaha, Neb., for appellee Chicago, M. & St. P. Ry. Co.

Before HOOK, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. The Union Pacific Railroad Company owns the depot and attaching terminals at Omaha. The Rock Island, with other roads, are its tenants under a so-called "Union Station contract." The contract provisions governing the liability between the roads for accidents within these terminals are that each road shall pay for damage arising out of the "conduct or negligence of its own employés," and that such damages as arise from the "conduct or neglect of employés paid in common" shall be charged to current expenses of operation and maintenance and paid by all in common or on an agreed basis. A collision occurred between Union Pacific and Rock Island engines on these terminal tracks, and the question is whether the Rock Island, or all of the roads, should pay for the damages.

A few months after the accident, on complaint by the Union Pacific to the Rock Island that the latter should assume the damage, the two roads finally agreed to arbitrate the question. The Union Station contract provided for arbitration. The arbitrators were chosen and proceeded to consider the matter. Through mistake, instead of sending the arbitrators the station contract as governing the controversy, another agreement between the roads, governing the use of different trackage near Omaha, was delivered to them. This latter

contract provided, in case of collision between trains of the roads, the one at fault should pay all damages, and "when either is at fault, or both are in fault, each shall bear its own loss"; also that, if the fault was of an employé "whose duties are directly connected with the movement of trains of both parties," the road shall bear all loss suffered by it. Shortly before the arbitration concluded the error was discovered, when the arbitrators were notified, and the proper contract sent to them. The arbitration resulted in a finding that the Rock Island was entirely to blame and should assume the entire loss.

Shortly after this award the Rock Island wrote the Union Pacific that it would not be bound by the award, whereupon the Union Pacific filed this bill against the Rock Island and the other tenant roads, praying that the court determine the validity of the award, and, if invalid, determine whether under the facts the Rock Island alone or all the roads in common should assume the loss, and for a decree against such parties as under the arbitration or facts the court should find liable. A special master was appointed. The master heard all of the testimony, both such as related to the arbitration, and such as related to the accident. The result of his findings and conclusions was that the Rock Island was solely liable, both because the arbitration was binding, and because the sole proximate negligence was the negligence of the Rock Island engine crew. To this report the Rock Island filed exceptions, which were by the court overruled, and decree entered in accordance with the report. From that decree the Rock Island appeals.

[1] At the threshold of the case the appellant insists that, at the time the trial court heard and determined the master's report, it was without jurisdiction to act thereon. This is based on the situation that at that time the Rock Island was under receivership in another federal court, and the Union Pacific had filed before the special master therein a claim covering the subject of this suit under a general order of the court, barring claims not filed within a certain period. This contention is not well founded for several reasons. This suit was not against the receiver, but the railroad; other parties to this suit were interested in its result; the first jurisdiction of this subject and parties was in this trial court; there was not necessarily any conflict of jurisdiction. It may also have a bearing that the Union Pacific had not become a party to the receivership suit, by intervention or otherwise. The record is silent as to when it filed its claims.

The case on its merits naturally divides into two main considerations: (a) The validity of the arbitration; and (b) the seat of the negligence which caused the collision. If the arbitration is valid, and appellant bound thereby, the award therein made measures the rights of the parties. If the arbitration is invalid, then the question is the location of the blame, and in conformity with that determination a settlement of the rights of the parties as defined in the Union Station contract.

### The Arbitration.

Appellant attacks the arbitration for the following reasons:

(1) That is was agreed to under a mutual mistake and proceeded thereunder.

(2) That all interested parties did not join therein.

(3) That it was denied an opportunity for a hearing before the arbitrators.

(4) That one of the arbitrators signing the majority award was disqualified because of interest in the controversy.

(5) That the testimony before the arbitrators does not support their findings.

(6) That the arbitrators failed to give notice and refused to have a further hearing when mutual mistake as to contract was discovered.

These will be considered seriatim.

·[2] 1. It is true that the arbitration was begun under a mutual misapprehension as to which contract controlled, and this mistake was not discovered for some time, until about a month before the award. It is clear, however, that the manner of selection and the number of arbitrators happened to accord with the requirement of the true contract; also, that when both parties discovered the mistake, instead of questioning the arbitration, they at once furnished to the arbitrators copies of the true contract, and no objection was heard upon that score until after the award. This was a recognition and a waiver of this defect.

[3] 2. It is true that the other tenant lines did not join in the arbitration, and that they were interested in its result. But the interest of each of them was, without exception, opposed to appellant, and they are in this suit insisting upon the validity of the award. Obviously appellant was not injured, or his rights affected by their absence from the arbitration. He cannot register an objection that they were injured, or might have been injured, when they are here asking to be bound by that award.

3. A careful examination of the evidence convinces that there is no foundation for the claim that appellant was denied a full hearing before the arbitrators.

[4] 4. That one of the arbitrators (De Bernardi) signing the majority award was disqualified because of interest is true. He was general superintendent of one of the tenant roads, which appellant at all times knew. Almost a month before the award it discovered the mistake in contract, and from that time knew that his road was interested in the award, and therefore that the disqualification existed. Not only did it make no objection thereafter, but it proceeded with the arbitration and made no objection of this kind until after the award. This was a waiver.

5. In our judgment, the evidence supported the findings of the arbitrators.

[5] 6. The claim that the arbitrators failed to give notice and refused to hold further hearings after discovery of the mistake as to contract is not well taken. As to the notice, it was not only not necessary, but the appellant actively participated thereafter by sending the contract and some further information to the arbitrator chosen by it, who communicated that information to the other arbitrators. The facts had long been before the arbitrators as fully as the parties desired, except for the above one piece of information relating to the

common employment of the engine herder, which was communicated as soon as discovered by appellant. While the parties did not have another meeting, they did hold correspondence, which had the same practical effect. In fact, it was during this correspondence that 'De Bernardi first called to the attention of the other two the controlling force of the Union Station contract. In our judgment, the arbitration is not subject to attack, and its award is binding upon appellant.

The judgment is affirmed.