## FIREMEN'S FUND INS. CO. v. FLINT HOSIERY MILLS, Inc.

## HOMELAND INS. CO. v. SAME.

### Nos. 3716, 3717.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

Julius C. Smith, of Greensboro, N. C., and Alex. W. Smith, Jr., of Atlanta, Ga. (Smith, Wharton & Hudgins, of Greensboro, N. C., on the brief), for appellants.

G. C. Hampton, Jr., of Greensboro, N. C. (Cooper A. Hall, of Burlington, N. C., Clifford Frazier, C. L. Shuping, Frazier & Frazier, and Shuping & Hampton, all of Greensboro, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WATKINS, District Judge.

SOPER, Circuit Judge.

These cases were originally brought in the superior court of Alamance county, N. C., by Flint Hosiery Mills, Incorporated, a North Carolina corporation, to recover under contracts of fire insurance issued by the respective defendants, for loss and damage by fire to the contents of the plaintiff's mill in the city of Burlington, N. C. Upon motion of the defendants, the cases were removed to the District Court on the ground of diversity of citizenship, and answers were filed, wherein slight damage by fire to the property was admitted and the following defense was alleged: The parties were unable to agree on the amount of the damage, and, pursuant to provisions in the policies, E. T. Carr was first named as appraiser by the plaintiff, and later E. H. Selden as appraiser by the insurance companies, and an appraisal agreement was entered into between the plaintiff and all the insurance companies carrying insurance upon the property. These appraisers, being unable to agree upon an umpire, the judge of the Tenth judicial district of North Carolina appointed J. W. Lindsay as umpire. After an investigation, the appraisers being unable to agree on the amount of the loss, the umpire arrived at the figure of $5,640; and an award was signed by Lindsay and Selden for that sum, and it was determined that the amount of the liability of the Firemen's Fund Insurance Company was $2,596.82 and of the Homeland Insurance Company $811.52. Carr refused to sign the award. The companies offered to pay the amounts indicated, but the plaintiff refused to accept them. The defendants then paid the money into court, and prayed in each case that the plaintiff have judgment therefor, and no more.

In response to this defense, the plaintiff replied that the award was a fraud upon its rights, for the reason that Selden, the appraiser selected by the insurance companies, was incompetent and interested, and had for a long time been a regular appraiser in the employ of the defendants and other insurance companies, and had been selected on this occasion for the purpose of reducing the loss to the very lowest possible figure, regardless of the actual loss and damage, of which facts the plaintiff was ignorant, until after the award was made. Hence it was claimed that the appraisal and award was a fraud upon the plaintiff's rights, as well for

the reasons stated as for the further reason that the amount arrived at was grossly inadequate and unjust. By way of rejoinder, the defendants denied that Selden was an interested and partial appraiser, and alleged that Carr, the appraiser appointed by the plaintiff, was biased in its interest, and had been previously employed and paid by the plaintiff to make an investigation. into the very loss and damage that was the subject-matter of the suit.

Upon motion of the defendants, the cases were consolidated for the purposes of trial, and were transferred to the equity docket, and the parties stipulated that the court might not only pass on the questions of equity that might arise, but, in the event that any questions of law should remain, the court might determine them without a jury, so that the cases could be disposed of in one suit.

The evidence in the case showed that the plaintiff in its original proof of loss claimed the sum of $48,153.71 for damages to 80 machines and certain merchandise, while the estimate of the adjuster for the insurance companies was $2,005. Estimates of the loss offered by witnesses on behalf of the plaintiff at the trial were all in excess of $40,000, and one offered by officials of the company ran as high as $47,855.85. The appraiser Carr furnished figures to the umpire of a loss of approximately $47,000, and at the hearing testified to a figure of $43,-894.53, giving itemized estimates for the damages to the machines. On behalf of the defendants, it was proved that Selden, who died before the trial, had offered an estimate to the umpire of $1,630.78, and witnesses experienced in the business gave testimony tending to show that the extent of the fire was small and that the damages to the machines did not exceed $2,000. The umpire, Lindsay, who, as we have seen, made an award of $5,640, gave evidence in substantiation of this amount.

There was also evidence tending to show that neither of the appraisers, Selden and Carr, was disinterested and free from bias. It was stipulated that Selden had acted as appraiser in similar proceedings in approximately 200 cases in seven years, in 85 per cent. of which he acted as appraiser for the insurance companies and in 15 per cent. as appraiser for the insured, and that his total fees for services as appraiser during this period amounted to $18,655. It was also testified that he had had no experience with machinery; that he neglected to submit any of his figures of appraisal to appraiser Carr; that he endeavored to secure the appointment as umpire of a number of persons partial to the insurance companies, and to secure expert testimony unfavorable to the insured upon promise of payment of a substantial fee. On the other hand, there was ample evidence to show that appraiser Carr was acting in effect as an advocate of the insured. He was originally employed by the insured to appraise the property, estimate the loss, and furnish the proofs for the insured, and was paid for these services; and he was in close touch with the officials of the insured throughout the entire controversy. The evidence was conflicting as to whether Selden's partiality was discovered by the plaintiff before the award. There was no evidence of intent to conceal his prior experience as appraiser.

Upon this evidence, the District Judge found that Selden was not a competent and disinterested appraiser, but was prejudiced against the plaintiff and biased in favor of the defendants; that the plaintiff had no knowledge of his partiality prior to the award, and that the award made by him was so grossly inadequate as to shock the conscience of the court; that the appraiser Carr had made up a proof of loss for the insured, but that, as his name appeared thereon, the defendants had knowledge of this fact. It was also found that the actual value of the property insured was less than $69,500, the amount of the total insurance; that the actual loss caused by the fire was $22,024.55, and that the Homeland Insurance Company was indebted to the insured in the sum of $3069 and the Firemen's Fund in the sum of $10,140, both with interest from August 9, 1932. The District Judge reached the conclusion of law that the conduct of the plaintiff in selecting as its appraiser one who had made out the proof of loss, with the knowledge of the insurance companies, did not justify the latter in selecting an incompetent and interested appraiser, and did not preclude the plaintiff from invoking the aid of a court of equity to set aside the award, especially as the plaintiff had no knowledge of this incompetency and interest, and did not waive its right in respect thereto. Consequently it was held that the award, being grossly inadequate, should be set aside, and judgment given for the plaintiff in the amounts above set forth.

In reaching these conclusions, the District Judge relied largely on the decision of the Supreme Court of North Carolina in Hill

v. Insurance Co., 200 N. C. 502, 157 S. E. 599. In that case there was evidence that the award was signed by an inexperienced appraiser appointed by the insured, by virtue of fraudulent representations on the part of the other appraiser that it was to be submitted to the umpire for final approval, and this fact alone was sufficient to nullify it. There were, in addition, however, other facts that contributed to the result. The appraiser appointed by the insurance company had frequently acted in a similar capacity, and the court held that this fact, although not conclusive, was evidence to go to the jury on the question of qualification. The award was only $2,445, while the jury found the damage to be $5,172, and it was held that an award so grossly and palpably inadequate as to shock the moral sense and conscience constituted evidence tending to show fraud or strong partiality on the part of the arbitrators.

We should be loathe to hold that the mere fact that an appraiser has served in appraisal proceedings on previous occasions for a party to an arbitration constitutes conclusive evidence of bias or partiality, for in a recent case, Young v. New York Underwriters' Ins. Co., 207 N. C. 188, 176 S. E. 271, the Supreme Court of North Carolina has held to the contrary, and such is the general rule. See volume 7, Supp. Cooley's Briefs on Insurance, p. 1511; Levin v. Northwestern National Ins. Co. (C. C.) 185 F. 981; Cohen v. Atlas Assurance Co., 163 App. Div. 381, 148 N. Y. S. 563; Messler v. Williamsburgh City Fire Ins. Co. (R. I.) 95 A. 601; Equitable Fire & Marine Ins. Co. v. Stieffens, 154 Va. 281, 153 S. E. 731. But, if we assume that Selden's prior experience, together with his other activities during the progress of the arbitration (which, being dead, he could not explain or deny), disclosed a bias that would disqualify him, we are still confronted by the fact that the owner of the mill deliberately chose as its arbitrator one who had already accepted employment in its behalf in this very matter. The District Judge found this to be the case, and the evidence, including that given by Carr himself, indicates quite clearly that throughout the proceeding he was busily engaged in furthering the interest of his employer.

It is true that knowledge of Carr's earlier connection with the plaintiff was brought home to the insurance companies, and the general rule is that one who proceeds with an arbitration with knowledge of facts indicating bias on the part of an appraiser waives the disqualification, and may not thereafter use it as a basis for setting aside the award. Thomajanian v. Odabshian, 272 Mass. 19, 172 N. E. 232; 47 L. R. A. (N. S.) note, p. 342. Duvall v. Sulzner (C. C.) 155 F. 910; Commonwealth Tobacco Co. v. Alliance Insurance Co., 238 Mass. 514, 516, 131 N. E. 213; Chicago, R. I. & P. R. Co. v. Union Pacific R. Co. (C. C. A.) 254 F. 235, 238. Nevertheless we cannot agree that the plaintiff is in a position to object to that which the insurance companies have done. It does not come into court with clean hands, for it initiated the wrongdoing by the appointment of Carr, and it may not now prefer the complaint in equity, as a basis for the avoidance of the award, that the defendants followed in its footsteps and engaged in similar misconduct. Indeed, the similarity of the actions of the parties supplies a necessary ingredient of a defense based upon the maxim, since it emphasizes the close relation of the plaintiff's conduct to the subject-matter of the suit. The doctrine that he who comes into equity must come with clean hands has recently been considered by the Supreme Court in Keystone Driller Co. v. Excavator Co., 290 U. S. 240, 54 S. Ct. 146, 78 L. Ed. 293, where the plaintiff in a patent suit was denied an injunction for patent infringement which it sought in part on the strength of a decree in another case obtained by it through the fraudulent suppression of evidence. In applying the doctrine and in stating its limitation, the court said (pages 244, 245 of 290 U. S., 54 S. Ct. 146, 147):

"The governing principle is 'that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' * * *

"But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some

measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. Story's Equity Jurisprudence (14th Ed.) § 100. Pomeroy, Equity Jurisprudence (4th Ed.) § 399. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."

See, also, Edward Thompson Co. v. Am. Law Book Co. (C. C. A.) 122 F. 922, 925, 926, 62 L. R. A. 607; Commonwealth Finance Corp. v. McHarg (C. C. A.) 282 F. 560; Waller v. Eanes' Adm'r, 156 Va. 389, 157 S. E. 721; 1 Pomeroy's Equity Jurisprudence (4th Ed.) § 397; Connecticut Tel. & Elec. Co. v. Automotive Equipment Co. (D. C.) 14 F.(2d) 957, 970; Sharpless-Hendler Ice Cream Co. v. Davis, 17 Del. Ch. 161, 151 A. 261.

The case of Western Assurance Co. v. Hall Bros., 143 Ala. 168, 38 So. 853, upon which the plaintiff relies, is distinguishable from the case at bar. The partiality of the appraiser for the companies and the umpire in that case was unknown to the plaintiff when the arbitration agreement was signed, but was later ascertained, whereupon the insured demanded, and the companies refused, the selection of disinterested and competent appraisers, and hence it was held that the insured was justified in breaking up the arbitration and suing on the policy.

▮ We are unable to reach the conclusion that the award was so grossly inadequate as to constitute of itself sufficient evidence to require an avoidance, when taken in connection with the other evidence in the case. It is well established that every reasonable presumption will be indulged to sustain an award, and that a court may not substitute its judgment for that of the arbitrators, or set aside an award for mere inadequacy in amount, unless it is so great as to indicate corruption or partisan bias on the part of the arbitrators. Burchell v. Marsh, 17 How. 344, 15 L. Ed. 96; Niagara Fire Ins. Co. v. Boon, 76 Ark. 153, 88 S. W. 915; J. E. Davis Mfg. Co. v. Stuyvesant Ins. Co., 160 App. Div. 74, 145 N. Y. S. 192; Phoenix Ins. Co. v. Everfresh Food Co. (C. C. A.) 294 F. 51; St. Paul Fire & Marine Ins. Co. v. Eldracher (C. C. A.) 33 F.(2d) 675; Continental Ins. Co. v. Garrett (C. C. A.) 125 F. 589; Aetna Ins. Co. v. Hefferlin (C. C. A.) 260 F. 695. Much has been said in regard to the partiality of the appraisers appointed by the parties; but the evidence shows quite clearly that the decision in this case was reached after a careful investigation by an umpire, who was both competent and disinterested. There is some evidence to the effect that the umpire had not had experience with the particular type of machines injured in the fire. However, he was an experienced hosiery mill man, and he called to his assistance, as he had the right to do, other men of experience. See volume 7, Supp. Cooley's Briefs on Insurance, p. 1511.

It was freely admitted in argument that the umpire was a man of high character and entirely disinterested in the result of the case. There is nothing to indicate that he acted improperly, and nothing except the widely varying estimates of the opposing witnesses to show that the amount awarded was incorrect. It may be that the aggregate sum of $22,024.55, found by the District Court without itemization, more nearly represents the actual loss sustained by the plaintiff than the sum of $5,640 awarded by the umpire; but, to reach such a conclusion, it is necessary to weigh the evidence and to make an independent finding of fact. To do this, however, is to substitute in place of an arbitration, upon which the parties have agreed, the findings of another tribunal, and in effect to set aside the contract which they have made. The plaintiff was of course entitled to an impartial and disinterested consideration of the amount of its loss, and to a tribunal consisting not merely of an impartial umpire but also of impartial appraisers on both sides; but, having itself violated this condition, it has now no right to complain.

It is worthy of note that, in an action brought by the plaintiff in the superior court of Alamance county against another insurance company on account of the same loss, it was held that the plaintiff had waived its right and was estopped from attacking the award.

The decrees are reversed, and the cases remanded for further proceedings in accordance with this opinion.

Reversed and remanded.