RENDERED: AUGUST 2, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0072-MR

LISA HASTETTER; BOBBY
STURGEON; INNOVATIVE
PRACTICE SOLUTIONS, LLC;
INTERVENTIONAL PAIN & SPINE
SPECIALISTS, LLC; KMA MEDICAL
GROUP, LLC; MEDICAL BILLING
CONSULTANTS, LLC; AND TYLER
BURKE                                                                APPELLANTS


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                     HONORABLE THOMAS D. WINGATE, JUDGE
                        ACTION NO. 20-CI-00343


COMMONWEALTH PAIN
SPECIALISTS, PLLC AND DR.
RICHARD A. LINGREEN, M.D.                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND A. JONES, JUDGES.

ACREE, JUDGE: Appellants challenge the Franklin Circuit Court's January 11,

2023 Order and Final Judgment confirming an arbitration award in favor of

Appellees, Dr. Richard Lingreen and Commonwealth Pain Specialists, PLLC (CPS). Appellants argue that the Arbitrator exceeded his authority by assigning joint and several liability to individual Appellants Hastetter, Burke, and Sturgeon. They also argue the Arbitrator's final order was so flawed as to demonstrate his partiality. We disagree with both arguments and affirm.

## BACKGROUND

Appellant Innovative Practice Solutions (IPS) is a management services company, and Appellants Hastetter, Burke, and Sturgeon are its members. Appellee Commonwealth Pain Specialists (CPS) is a medical practice in Frankfort, and Appellee Dr. Lingreen is its sole member. IPS was specifically created to manage CPS.

IPS and Dr. Lingreen entered a series of contracts. Central to this appeal is the Management Services Agreement (MSA) between CPS and IPS, which became effective March 1, 2018. These contracts also include an Employee Lease Agreement between CPS and KMA Medical Group (KMA), a company that Hastetter owned and which would lease physicians and other staff to CPS. Dr. Lingreen and KMA entered an Employment Agreement guaranteeing Dr. Lingreen an annual salary. As Appellants describe them, these contracts placed management of CPS into the hands of IPS, leaving Dr. Lingreen free to focus on practicing

medicine while remaining CPS's only shareholder. The practice grew, opening locations in Lexington, Louisville, and Bowling Green.

The MSA contains an arbitration clause which places no restriction on the scope of the authority of an arbitrator. Clause 25 of the MSA is titled "Arbitration" and states as follows:

> Any controversy, dispute or disagreement arising out of or relating to this Agreement, or the breach thereof, shall be settled exclusively by binding arbitration with one (1) arbitrator, which arbitration shall be conducted in Frankfort, Kentucky in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and judgment on the arbitration award may be entered in any court having jurisdiction thereof.

Like the MSA, the Employee Lease Agreement provided for arbitration. The arbitration clause instructed how the arbitrator was selected, the manner of proceeding, and the requirement that the arbitrator enter findings of fact and conclusions of law, among other requirements. It also prohibited the arbitrator from awarding punitive damages or damages in excess of the amounts provided by the agreement. The arbitration clause did not place a limit on the scope of the subject matter of arbitration.

The parties' relationship became contentious and now express contrasting characterizations of their history and the nature of their relationship.

According to Appellants, Dr. Lingreen exhibited a pattern of incompetence and poor judgment necessitating the business arrangement in the first place, but also resulting ultimately in its termination. Appellants describe CPS as a failing business that became profitable because of their efforts. They accuse Dr. Lingreen of behaving unprofessionally and inappropriately toward staff and patients.

Appellees describe CPS as a successful business, but its rapid growth and outstanding debt obligations led to management difficulties. Dr. Lingreen discussed his concerns with Burke and Hastetter, which yielded the MSA. Appellees believe the stiff management fees – fifty percent of CPS's gross receipts – caused the enterprise to be unprofitable.

Hastetter discussed termination of the arrangement with Dr. Lingreen, which would require payment of hundreds of thousands of dollars in management fees to IPS. Termination would also involve transfer of all CPS locations, except the Frankfort office, to a new medical practice, Appellant Interventional Pain & Spine Specialists (IPSS). Hastetter also sought transfer of CPS's patient files to IPSS, despite the parties' agreement that the patient files would remain the property of CPS.

Dr. Lingreen's salary was subsequently reduced from $300,000 annually to $100,000. Appellants claim this reduction was due, among other

reasons, to Dr. Lingreen failing to meet performance benchmarks and for his operation of a medical practice outside CPS, while Appellees claim the reduction was retaliation for Dr. Lingreen not cooperating with a request to transfer patient files.

By January 1, 2020, all other doctors at CPS had left to join IPSS. Dr. Lingreen was the sole remaining physician at CPS, and Frankfort was its last location. IPS terminated the MSA with CPS on April 4, 2020.

Appellees filed suit in the Franklin Circuit Court, asserting a variety of tort and contract claims. The circuit court ordered the parties to arbitration pursuant to the arbitration clauses of both the MSA between IPS and CPS and the Employee Lease Agreement between KMA and CPS. The Dispute Resolution Service of the American Health Lawyers Association (AHLA) appointed the Arbitrator. In addition to IPS, Hastetter, Burke, and Sturgeon were respondents to the arbitration.

Appellees submitted their statement of claims to the Arbitrator that included a broad array, many of which were specifically directed at the individual Appellants. Among other claims, Appellees alleged: violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.[1] §§ 1961-1968, against all respondents; RICO conspiracy against all respondents; common law

_____

[1] United States Code.

fraud against Hastetter, Burke, and IPS; misappropriation of trade secrets against all respondents; breach of contract against IPS; breach of duty of good faith and fair dealing against IPS; theft by unlawful taking against Hastetter and IPS; breach of fiduciary duty against Hastetter and IPS; conversion against all respondents; and common law conspiracy against all respondents.

Before the final hearing, the Arbitrator granted partial summary judgment in favor of Appellees as to IPS's counterclaim – breach of contract for Appellees' nonpayment of management fees – concluding the claim of more than five million dollars in fees to be unconscionable and contrary to law.

The arbitration hearing began on November 8, 2021. The Arbitrator held an additional hearing on April 8, 2022, regarding calculation and apportionment of damages. After the hearing but prior to entry of the award, Appellants petitioned the AHLA Review Board for removal of the Arbitrator.[2] The AHLA Review Board denied the motion.

The Arbitrator served the parties with the award on May 3, 2022. Therein, the Arbitrator granted judgment for Appellees for the following claims:

_____

[2] Appellants argued in their petition that, due to his age, the Arbitrator was physically and mentally impaired to a degree that he was unable to perform his role as an arbitrator. They alleged the Arbitrator had trouble staying awake, had difficulty walking, and was often confused and forgetful during the hearing. They also alleged that, due to the Arbitrator's condition, he relied on a nonlawyer – a third-year law student – to render the award. However, nothing about the Arbitrator's award demonstrates he did not review the briefing, exhibits, and testimony presented before him before making his ruling. The allegations contained in Appellants' motion to disqualify the Arbitrator have no bearing in the current appeal.

-6-

breach of fiduciary duty, theft by unlawful taking, misappropriation of trade secrets, breach of contract and good faith and fair dealing as related to the MSA, breach of the Employment Agreement, and conversion. The Arbitrator granted in part and denied in part Appellees' fraudulent inducement claim. The Arbitrator awarded Appellees $2,892,856.44, holding Appellants – including Hastetter, Sturgeon, and Burke – jointly and severally liable.

Appellees filed a motion to confirm the award with the circuit court. Appellants filed a motion to vacate or modify the award. The circuit court denied Appellants' motion on January 3, 2023, and entered its order and final judgment confirming the award on January 11, 2023. Appellants now appeal.

## ANALYSIS

A high level of deference is afforded to arbitration awards, and the grounds available for vacating them are limited. "Generally, courts may not review an arbitrator's award." *Don Booth of Breland Grp. v. K&D Builders, Inc.*, 626 S.W.3d 601, 606-07 (Ky. 2021) (citing *Taylor v. Fitz Coal Co., Inc.*, 618 S.W.2d 432, 432 (Ky. 1981)). Not even errors of law or fact warrant setting aside an arbitration award. *Id.* at 607 (citation omitted). The sufficiency of the evidence supporting the award is also nonreviewable. *Taylor*, 618 S.W.2d at 432 (citation omitted).

Our deferential review is rooted in the notion that "'[t]he decision by the arbitrator is considered an extension of the parties' voluntary agreement to arbitrate.'" *Id.* (citing M. DOMKE, THE LAW AND PRACTICE OF COMMERCIAL ARBITRATION SECS. 33.01-34.02 (1968 & Cum.Supp. 1979)). Additionally, "when a court examines the evidence and imposes its view of the case it substitutes the decision of another tribunal for the arbitration upon which the parties have agreed, and in effect sets aside their contract." *Id.* at 433 (citing *Firemen's Fund Ins. Co. v. Flint Hosiery Mills*, 74 F.2d 533 (4th Cir. 1935), *cert. denied* 295 U.S. 748, 55 S. Ct. 826, 79 L. Ed. 1692 (1935)).

The Kentucky Uniform Arbitration Act (KUAA) supplies five exclusive grounds upon which a court may vacate an arbitration award:

> (1) Upon application of a party, the court shall vacate an award where:
>
> > (a) The award was procured by corruption, fraud or other undue means;
> >
> > (b) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> >
> > (c) The arbitrators exceeded their powers;
> >
> > (d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to

the provisions of KRS[3] 417.090, as to prejudice substantially the rights of a party; or

(e) There was no arbitration agreement and the issue was not adversely determined in proceedings under KRS 417.060 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court is not ground for vacating or refusing to confirm the award.

KRS 417.160(1). "[A]ll arbitration awards arising from agreements entered into after the effective date of the [KUAA] may only be set aside by a court pursuant to those grounds listed in the [KUAA]." *3D Enters. Contracting Corp. v. Lexington-Fayette Urb. Cnty. Gov't*, 134 S.W.3d 558, 563 (Ky. 2004).

Appellants first argue the Arbitrator exceeded his authority by holding Hastetter, Burke, and Sturgeon jointly and severally liable under the arbitration award and, therefore, the Arbitrator exceeded his powers per KRS 417.160(1)(c). "In reviewing whether an arbitrator exceeded his powers, 'a court should look to whether the award was fairly and honestly made within the scope of the issues submitted for resolution or whether the arbitrators acted beyond the material terms of the contract.'" *Wagner v. Drees Co.*, 422 S.W.3d 281, 283 (Ky. App. 2013) (quoting *3D Enters. Contracting Corp.*, 134 S.W.3d at 561).

---

[3] Kentucky Revised Statutes.

It is a difficult task indeed to demonstrate an arbitrator exceeded his authority. In *Don Booth of Breland Group v. K&D Builders, Inc.*, the purchaser of residential real estate sought to vacate an arbitration award, arguing the arbitrator exceeded his power under KRS 417.160(1)(c). 626 S.W.3d at 604-06. The purchaser argued the arbitrator exceeded his authority by applying the merger doctrine to conclude any discrepancies in the seller's disclosure ultimately merged into the deed; this decision extinguished the purchaser's claims for breach of contract and recission. *Id*. at 606-08. Because this issue was before the arbitrator and because the arbitrator's decision to apply the merger doctrine was an application of law, the Supreme Court of Kentucky concluded the arbitrator did not exceed his authority. *Id*. at 608. "Even if incorrect, a reviewing court's disagreement with the arbitrator's application of law does not support vacating the award under KRS 417.160, if the issue presented was within his proper scope and the award was fairly and honestly made." *Id*. at 608-09.

Even an arbitrator's misapplication of the KUAA itself does not constitute an excessive exercise of power. In *Wagner v. Drees Company*, the purchasers of a home asked the circuit court to vacate an arbitrator's order dismissing their case on statute of limitations grounds. 422 S.W.3d at 282. They argued the arbitrator exceeded his power under KRS 417.160(1)(c) because the arbitration agreement did not provide for dispositive motions and because the

-10-

KUAA granted the purchasers the right to a hearing. *Id*. A panel of this Court determined the arbitrator did not exceed his authority, first because the arbitrator was granted full authority to resolve the parties' dispute, and so his decision to dismiss the purchasers' claims upon a motion to dismiss was within the scope of this authority. *Id*. at 283. Second, we determined the arbitrator acted within his powers when he would not afford the purchasers a hearing because the KUAA's guarantee of a right to be heard can be affected and even superseded by the arbitration agreement. *Id*.

Additionally, although acting beyond the material terms of an arbitration agreement is generally grounds to find the arbitrator abused his power, our jurisprudence is so deferential that, in one opinion at least, the Supreme Court found no fault with the arbitrator's disregard of contractual provisions particular to that case. In *3D Enterprises Contracting Corporation v. Lexington-Fayette Urban County Government*, a contractor sought additional compensation following delays occurring during a project to improve a public swimming pool, despite the contract including a "no-damages-for-delay" clause. *3D Enters. Contracting Corp.*, 134 S.W.3d at 559-60. The delays were a result of Lexington-Fayette's own health department requiring modifications to the project after construction already commenced. *Id*. at 560. The Kentucky Supreme Court determined a panel of arbitrators did not exceed their power in declining to enforce the no-damages-for-

-11-

delay provision. *Id.* at 561. Quoting and adopting the reasoning of this Court, the Kentucky Supreme Court stated:

> The applicability of the no-damages-for-delay clause and the change orders was squarely presented to the arbitrators. They heard evidence on exceptions to the enforceability of the clause and rendered a decision based on the evidence. We disagree with the circuit court's view that the arbitrators exceeded their powers by failing to enforce the no-damages-for-delay clause.

*Id.*

These opinions demonstrate arbitrators hold expansive power. We conclude the Arbitrator in the instant case acted within the scope of his authority and did not abuse his power under KRS 417.160(1)(c) by holding the individual Appellants joint and severally liable alongside IPS. The MSA's arbitration clause did not limit the authority of the Arbitrator to decide the parties' dispute, and only designated the location of arbitration and how an arbitrator is selected. As in *Wagner*, the Arbitrator was afforded full authority to resolve their dispute under the MSA.

The issue of whether to assess damages against the individual Appellants, like the no-damages-for-delay clause in *3D Enterprises*, was before the Arbitrator for his consideration. Several of the claims in Appellees' statement of claims were directed at all respondents to the arbitration, including the individual Appellants. The Arbitrator's legal reasoning or his factual findings are beyond the

reach of our review, so the quality of the Arbitrator's factual or legal bases for assigning joint and several liability are of no consequence to this appeal. The issue of whether liability should be assessed against the individual Appellants was submitted to the Arbitrator, which is sufficient for us to conclude he did not exceed the scope of his authority.

Appellants also argue the Arbitrator's award should be vacated because he exhibited partiality under KRS 417.160(1)(b). They argue the Arbitrator so manifestly disregarded the law that his misapplication of the law demonstrates his bias. We agree with Appellees that Appellants cannot, under the guise of an accusation of bias, present their legal arguments to this Court. "'The alleged partiality must be direct, definite, and capable of demonstration, and the party asserting it must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Meers v. Semonin Realtors*, 525 S.W.3d 545, 550 (Ky. App. 2017) (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)).

Appellants do not direct us to any aspect of the Arbitrator's final order or the arbitration proceedings which meets this definition. Instead, Appellants attempt to demonstrate bias indirectly. Appellants hope we draw the inference of bias based on the Arbitrator's alleged incorrect legal analysis, as well as the fact his award heavily favored Appellees. This is insufficient to demonstrate bias. As Appellees note, the Arbitrator did not find in favor of Appellees on every one of

their claims, including their RICO claim. However, even if the Arbitrator had found in Appellees' favor on all their claims, this would not demonstrate bias and would not warrant vacating the award. We will not, as Appellants hope, engage in an impermissible review of the Arbitrator's legal analysis under the pretext of alleged bias.

## **CONCLUSION**

Based on the foregoing, we affirm the Franklin Circuit Court's January 11, 2023 Order and Final Judgment.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

David S. Kaplan
Casey L. Hinkle
William R. Adams
Louisville, Kentucky

J. Guthrie True
Phillip C. Lawson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Brian M. Johnson
Logan J. Mayfield
Lexington, Kentucky