**TEXTILE WORKERS UNION OF AMER-ICA, AFL-CIO, LOCAL UNION NO. 1386, Appellant,**

v.

**AMERICAN THREAD COMPANY, Clover, South Carolina, Appellee.**

No. 8189.

United States Court of Appeals Fourth Circuit.

June 5, 1961.

Theodore W. Law, Jr., Columbia, S. C. (Henry W. Kirkland, Columbia, S. C., and Benjamin Wyle, New York City, on the brief), for appellant.

Frank A. Constangy, Atlanta, Ga. (Constangy & Prowell, Atlanta, Ga., Perrin & Perrin, Spartanburg, S. C., and Fred W. Elarbee, Jr., Atlanta, Ga., on the brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

In the present appeal, which is the second taken by the union in this labor arbitration case, it is asserted that the District Court erred in refusing to require the employer to comply with an arbitration award.

D. M. Arrowood, an employee of the American Thread Company, was discharged on November 11, 1957, for allowing, in the words of the company, "a cotton lap to run through a carding machine which he was supposed to be tending without properly straightening or tending to the lap or feeding in another lap so as to avoid damage to the machine or waste of production." On two earlier occasions he had been reprimanded and was given what was determined to be a customary warning for similar offenses. Arrowood filed a grievance against the company, maintaining that he was unjustly discharged, although he did not deny letting the lap run through.

There was full compliance with the preliminary grievance procedures prescribed by the collective bargaining agreement between the company and the Textile Workers Union. However, as these steps failed to effect a satisfactory resolution of the grievance in accordance with the contract provisions, the union requested arbitration. The company agreed to arbitrate, the parties stipulated the terms of the submission of the dispute and a hearing was held. The arbitrator pointed out that there was no question of Arrowood's guilt, since he did not deny the offense charged, but held that the offense did not amount to just cause for discharge. His award ordered suspension without pay for one week commencing November 11, 1957, and thereafter reinstatement without loss of seniority or other rights. He also awarded the employee back wages after the termination of the one week suspension, but limited to a maximum period of ninety days.

When the company refused to abide by the award, the union instituted this suit in the United States District Court for the Western District of South Carolina, seeking to compel compliance. The District Court dismissed the case for lack of jurisdiction and the union's first appeal followed. This court remanded, 4 Cir., 271 F.2d 277, stating:

"This case presents substantially the same question decided by this court in Enterprise Wheel & Car Corporation v. United Steel Workers, 4 Cir., 1959, 269 F.2d 327, and Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 1959, 268 F.2d 920. * * *

"Inasmuch as we decided Enterprise Wheel and Cone Mills after the District Court's decision in this case, we think the appropriate action here is to remand the case to the District Court for reconsideration in light of our opinions in Enterprise Wheel and Cone Mills."

On remand, the District Court again declined to order enforcement of the award, and the union again appealed.

A preliminary question concerns the District Court's jurisdiction to enforce the award. When this court remanded, its opinion observed that there might possibly be a difference between this case and the Cone Mills and Enterprise Wheel decisions with respect to the rights of individual employees to control the processing of grievances. Of course, in calling attention to this possibility we did not intend to rule in advance that there was a significant difference or what its legal effect would be. Upon remand, the employer renewed its motion to dismiss for lack of jurisdiction. The District Court, pointing out that employees could individually present their grievances in accordance with the grievance provisions of the collective bargaining agreement, expressed the view that under the Supreme Court's decision in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, the court did lack jurisdiction. However, instead of dismissing for lack of jurisdiction, the court proceeded to consider

whether the arbitrator had exceeded the scope of the submission, and granted the defendant's motion for summary judgment, apparently on the latter ground.

■ In its brief, The American Thread Company argues lack of jurisdiction, although in oral argument it seemed to concede that jurisdiction existed. We think that there can be no doubt that the District Court had jurisdiction. Westinghouse was not a suit to enforce an arbitration agreement in a collective bargaining contract but a union's undertaking to recover back wages due individual employees. Here, we are dealing with a promise by the employer, in a contract with the union, to arbitrate. Unless the matter sought to be arbitrated falls outside the subject matter of the submission, the District Court has jurisdiction under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185, to enforce both the promise to arbitrate and the promise to abide by the arbitrator's award. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972; Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 1959, 268 F.2d 920, certiorari denied 361 U.S. 886, 80 S.Ct. 157, 4 L.Ed.2d 121.[1]

On examination of the grievance procedure in this collective bargaining agreement, it is found to be not particularly unusual. Article VI provides a four step procedure for processing grievances. The first two steps permit either the employee and/or his union representative to bring a grievance before certain company officials. The third step, in the event the first two fail to bring a settlement, is for the Union Shop Committee to submit the grievance to the company. The fourth relates to grievances filed by the company against the union. Article VII of the contract then makes provision for arbitration in the event that disputes or grievances are "not satisfactorily adjusted under the Grievance Procedure set out in the preceding section." This is one continuous process, leading to. arbitration, and the many decisions, beginning with Lincoln Mills, supra, holding that such provisions are enforceable in the courts, leave no room to question the District Court's jurisdiction.

The union maintains, in accordance with the arbitrator's interpretation of the agreement, that whether particular conduct constituted just cause for discharge is a question that may be submitted to arbitration. The company, on the other hand, contends that the arbitrator exceeded his authority and that the award here was in violation of the contract and the terms of the submission. In arriving at our ultimate conclusions, we are not unmindful of certain principles which are hereinafter noted.

■ Even in earlier days when courts were less hospitable to arbitration, it was decided that they would not set aside an arbitrator's award for mere errors of fact or law; and mistakes in the admission of evidence or misinterpretation of the contract giving rise to the arbitration would not vitiate the award. It was only where the arbitrator clearly went beyond the scope of the submission that courts would interfere. Burchell v. Marsh et al., 1854, 17 How. 344, 15 L. Ed. 96. Later decisions are to the same effect: Georgia & F. Ry. Co. v. Brotherhood of Locomotive Engineers, 5 Cir., 1914, 217 F. 755; Firemen's Fund Ins. Co. v. Flint Hosiery Mills, 4 Cir., 1935, 74 F.2d 533; Mutual Benefit Health & Acc. Ass'n v. United Casualty Co., 1 Cir.,

1. The cases go even farther. It has been held in some jurisdictions that, although the particular issue between the employee and his employer is considered one involving a personal right, allowing the individual employee in those jurisdictions to sue the employer directly, yet if the collective bargaining agreement provides for arbitration of that type of dispute, the employee must at least attempt to invoke the arbitration procedure as a condition precedent to bringing his suit. See Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., 1958, 217 Md. 556, 144 A.2d 88, and the authorities there reviewed.

1944, 142 F.2d 390; United Fuel Gas Co. v. Columbian Fuel Corporation, 4 Cir., 1948, 165 F.2d 746.

■ While these principles have met with general acceptance, factual situations do arise where it may be a close question whether the arbitrator actually exceeded his authority, or merely committed what a court might deem error of law or fact. Three recent decisions of the Supreme Court involving labor arbitration agreements, without departing from the above stated principles, have clarified the role of courts in such close cases when dealing with collective bargaining contracts. See: United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409, and United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.[2] In these cases, the court reaffirmed the long established doctrine that an arbitration award is unenforceable if it exceeds the scope of the submission,[3] although where it is not "apparent that he [the arbitrator] went beyond the submission," courts should enforce the promise to arbitrate.

We now look to the terms and conditions of submission to arbitration and certain pertinent provisions of the contract, all of which, in our opinion, should be read and considered together in determining the real question here presented.

The stipulation for arbitration is as follows:

"*Under the terms of the contract and within the limits of those terms, including the restrictions on the power of the arbitrator,* does Grievance 157 allege, and has the union proved, a violation of the contract? If so, and *within the same limitations,* what should be the remedy?" (Emphasis here and in the quoted contract provisions is supplied.)

Article III of the collective bargaining agreement, titled "Management Rights," contains the following provisions:

"It is agreed that, except as expressly limited or modified in this Agreement, the Company has the right of management. This includes, among other things, the right to plan, direct, control, increase, decrease or discontinue operations; to change machinery or type of products, or demote employees subject to just cause, and *to discipline or discharge employees for just cause;* * * *; it is recognized further that *all rights heretofore exercised by or inherent in the Management,* and not expressly contracted away by the terms of this Agreement *are retained solely by the Management.* Any action by the Company under this Section may be made the subject of collective bargaining and grievance procedure, *up to but not including arbitration,* unless as otherwise hereinafter expressly provided in this Agreement. * * *.*"

2. In the Enterprise case, this court had thought that the award, in part, gave relief which was beyond the authority of the arbitrator, and we held that to such extent only the award should not be enforced. See Enterprise Wheel & Car Corp. v. United Steelworkers, 4 Cir., 1959, 269 F.2d 327. The Supreme Court, however, took the view that the relief granted was within a permissible construction of the contract, and since, in such circumstances, the arbitrator's construction should prevail, the award should have been enforced in its totality.

3. " * * * Nevertheless, *an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.* He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. *When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.*" (Emphasis supplied.) United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. at page 597, 80 S.Ct. at page 1361.

The last sentence of Article III which was omitted from the foregoing quotation is as follows:

"It is *expressly* agreed, however, that should the Company change existing work rules, that such changes are subject to the grievance and arbitration procedure under this Agreement." (Emphasis supplied.)

This last quoted sentence clearly indicates the intent of the parties as to the manner in which changes in, or modifications of, the Management Rights Provisions will be expressly and unequivocally stated.

Article IV, Sections 1, 2 and 3, are, in pertinent part, as follows:

"1. *Just Cause*—Employees shall be disciplined or discharged only for just cause, which shall include, but not be limited to, insubordination; violation of valid plant rules; failure to obey instructions of supervisors; *failure of an employee to properly perform his job in accordance with the Company standards,* * * *.

"2. *Procedure*—In all cases of discharge or discipline, the Company will promptly present a written statement to the employee or employees involved giving the cause of the discharge or discipline. The employee or the Union shall have the right to make such matter a grievance, subject to the grievance procedure of this Agreement, * * *.

"3. *Finding*—Should it be determined that any employee was disciplined or discharged without just cause, such employee shall be restored to his former status provided, however, that no arbitrator may award back pay for a period exceeding ninety (90) days, * *."

Article VI, Section 1, of the contract provides:

"Should any employee have any grievance arising from the operation or interpretation of this Agreement an earnest effort to adjust such grievance satisfactorily to the parties shall be made immediately in the following manner: * * *."

The first part of Article VII, pertaining to arbitration procedures, provides:

"Disputes, grievances, or disagreements involving application or interpretation of this agreement other than those affecting revision of the wage schedules attached hereto, workloads or work assignments, not satisfactorily adjusted under the Grievance Procedure set out in the preceding section shall be promptly referred to arbitration under the following procedure: * * *."

But Article VII, Section 7, is as follows:

"It is mutually understood and agreed that the findings and decisions of the arbiter shall be final and binding on both parties hereto. The arbiter shall make *no award affecting a change, modification or addition* to this Agreement and *shall confine himself strictly to the facts submitted in the hearing, the evidence before him and the terms of the contract,* including any amendments. * * *."

Whether the arbitrator, in making his award, exceeded his authority derived from the stipulation of submission and from the contract under which the stipulation was framed, was an issue clearly raised before the District Court. The employer contended that, to the extent the Award exceeded such authority, it was void and unenforceable.

It is impossible to overemphasize the terms and conditions of the submission which was the product of agreement between the parties and which was both the source and limit of the arbitrator's authority and power. The submission was clearly made subject to the "terms of the contract and within the limits of those terms, including the restrictions on the power of the arbitrator."

After reciting the fact that Arrowood was discharged for a third offense and after he had been given written warnings

for the same offense on two prior occasions, the arbitrator found and stated:

"I am satisfied from the evidence that the offense is a very serious one, though a frequent one in all card rooms. If the lap is not replaced before the last of it comes off the pin, a lump at the end of it will go into the card and cause damage to the card, which in turn will cause inferior quality in the product until the damage to the card is repaired. There is no question that Arrowood is guilty of an offense. The only question is whether, under the circumstances of the case, that offense constituted 'just cause' within the meaning of the Contract."

There was evidence produced at the hearing to show a long-standing policy in the "card room" of discharge following two warnings. This testimony was noted by the arbitrator who made no finding that such policy did not exist although he observed that one witness "admitted that disciplinary suspensions were sometimes employed," *not in the card room, but in the "Mill"*. After a reference to the failure of an employee to properly perform his job in accordance with company standards, specified in Article IV of the contract as one of the "examples of just cause," the arbitrator held that he was "not foreclosed from inquiring in this case whether just cause for discharge, rather than for a lesser disciplinary measure, existed." There was no showing that the discharge was discriminatory in the sense that the company imposed a penalty on this employee different from that imposed upon other employees for like offenses.

We are not persuaded that the Supreme Court, in recent cases involving arbitration and the right to enforcement of arbitration agreements, intended that the courts should permit an arbitrator to render decisions which do such violence to the clear, plain, exact and unambiguous terms of the submission and the contract of the contending parties. By Article III the company had the right

to discipline *or* discharge employees for just cause, surely a discretionary right, and more particularly when the offense is the "failure of an employee to properly perform his job in accordance with the Company standards," an offense illustratively specified as "just cause" in Article IV, Section 1. We find nothing in any section of Article IV or any other provision of the contract to show an intent to expressly contract away the rights reserved to management. The reservation of a right to either discipline or discharge for cause would be wholly ineffective and meaningless if the employer's action, pursuant to such right, is subject to review by an arbitrator on the basis of appropriateness. If the reserved right is construed to mean that the employer can take no disciplinary action in excess of a reprimand, except at its own risk and subject to severe penalties in case an arbitrator should later be of the opinion that some milder action is appropriate, the effect would be that the employer's inherent right which has not been expressly relinquished by contract is no right at all. As was stated in United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, at page 583, 80 S.Ct. 1347, at page 1353, 4 L.Ed.2d 1409:

"Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions."

The arbitrator found and declared that Arrowood was guilty of a serious offense. Implicit in this finding and his subsequent treatment of the case is the further finding that "just cause" for disciplinary action was established. But the contract itself provided that he could

make no award which would change, modify or add to the agreement; that "all rights heretofore exercised by or inherent in the management," and not expressly contracted away, were retained by management. The right to either discipline or discharge an employee for just cause, in the instant case for the failure of the employee to properly perform his job in accordance with company standards, was not, nor did the arbitrator find that it had been, *expressly* contracted away. It was a right, according to the evidence, theretofore exercised by management to discharge for the third failure to properly perform according to job requirements and standards.

Arrowood's grievance as formally filed by him stated: "The Company unjustly discharged me for letting a lap run through and I ask that I be reinstated on my job * * *." To this the company answered: "You were discharged for not paying proper attention to your job and thereby failing to perform your job duties in accordance with the Company's standards." The company was thus invoking the protection of Article III and Section 1 of Article IV in the exercise of its contractual right reserved to management.

■ Consistent with its answer to the grievance, the company agreed to arbitration under stated conditions. We do not understand the company's contention to be that the existence of good cause for *disciplinary* action was not arbitrable under *any* circumstances, or that a discharge, if challenged as discriminatory in the sense that lighter punishment was imposed upon others for similar offenses in similar circumstances, was not reviewable. But the company does contend that the arbitrator's only function was to determine whether good cause for *some* disciplinary action existed, the determination of the appropriate action to be taken being expressly reserved to management. When the arbitrator found that Arrowood had permitted a lap to run through, that it was his third offense, that he had received written warn-

ings of the consequence of a third offense, and recognizing the long-standing management policy of discharge for a third offense following written warning, the only possible remaining question was one of appropriateness of the employer's consistent disciplinary practice. That is the question the arbitrator then undertook to decide and it is that question which we hold to be beyond the terms of the submission and the contract provision for arbitration. If the express limitation contained in Article III (that the employer's exercise of his reserved right to discipline might be made the subject of a grievance and of collective bargaining, *but not of arbitration)* means anything, it means that the employer's established disciplinary practices were not to be upset by an arbitrator on the ground of inappropriateness. Neither the contract nor the submission gave the arbitrator any right to disregard established disciplinary practices, consistently applied, and to dispense his own brand of industrial justice.

But our decision need not rest on the reasons hereinbefore assigned in support of our conclusion that the arbitrator violated the terms of the contract and exceeded the limits of his authority. There is even a more compelling reason. The arbitrator speculated that Arrowood's offenses were due to mere negligence, *or* "to a workload so heavy that he could not properly cover it, or to not having his various job duties so lined up in time sequence that he could not cover them." In the absence of an express finding to that effect, we must assume that the arbitrator was not undertaking to base a judgment on "mere negligence." He did, however, disclose the real basis for his determination of the degree of what he had already found to be the employee's "serious offense" and the propriety of the penalty imposed.

It appears from his award that, in another and wholly unrelated arbitration case which involved this same company, a different arbitrator, after determining that the workload was proper under the contract, had found that this company

had been remiss in recognizing its responsibilities to train and supervise the "operators in the proper method and schedule of performing the card tender assignment." It is perfectly clear that the arbitrator, without evidentiary support in the instant case, accepted and adopted this finding and decision of the other arbitrator in total disregard of the provisions of Article VII, Section 7, requiring that he confine himself strictly to the facts submitted in the hearing, the evidence before him and the terms of the contract. He went completely outside the record in an obvious effort to find some semblance of support for his award. Thus, in aid of his search for justification of his action, the arbitrator manifested a disregard for the terms of the submission and a determination to exceed, if necessary, the limits of the authority and power conferred upon him. This we cannot approve.

The District Court's denial of enforcement of the award will be

Affirmed.

SOBELOFF, Chief Judge (dissenting).

1. United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

2. See e. g.: Firemen's Fund Ins. Co. v. Flint Hosiery Mills, Inc., 4 Cir., 1935, 74 F.2d 533, 104 A.L.R. 556; Mutual Benefit Health & Acc. Ass'n v. United Cas. Co., 1 Cir., 194, 142 F.2d 390; United Fuel Gas Co. v. Columbian Fuel Corporation, 4 Cir., 1948, 165 F.2d 746; Butte Miners' Union No. 1, etc. v. Anaconda Company, D.C.D.Mont.1958, 159 F.Supp. 431, affirmed 9 Cir., 1959, 267 F.2d 940; Enterprise Wheel & Car Corp. v. United Steelworkers, 4 Cir., 1959, 269 F.2d 327; Textile Workers Union, etc. v. American Thread Company, 4 Cir., 1959, 271 F.2d 277 (the previous appeal in the same case now before the court, where we pointed out the similarity between this case and Enterprise Wheel, supra.)

3. The basic principles set forth in the three recent Supreme Court labor arbi-

The court's decision in the present case not only fails to heed the unequivocal teaching of the Supreme Court in three recent labor arbitration cases,[1] but it also so directly conflicts with previous decisions of this court and other federal courts.[2] The opinion of the majority recognizes the appropriate governing principles of law, but then departs from them in the crucial final paragraphs.

I agree that the District Court had jurisdiction to enforce the award. I also heartily agree that both the general law of arbitration, and more particularly the recent decisions involving labor arbitration, require courts to enforce arbitration awards unless the arbitrator has clearly exceeded his authority, i. e., has decided a matter that is not, according to the submission or contract, "arbitrable."[3] However, to my mind, regard for these principles precludes the action taken by the majority. The arbitrator's award did not violate the terms of the submission and should be enforced.

1. As the court's opinion correctly points out, Arrowood never denied that he had committed the offense of letting

tration cases, see footnote 1, supra, have, as the majority points out, always been the law. However, the Supreme Court did make it clear in those cases that there are additional reasons why courts should not interfere with labor arbitration awards. In United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, the Court stated:

" * * * In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."

The manifest implication from the Supreme Court's language is that courts should be even more reluctant to refuse enforcement of a labor arbitration award than one in the area of commercial arbitration.

a lap run through. Nor was any question of discrimination ever raised. If the contention is correct that the only question that could be arbitrated was whether the employee did the act, or whether there was discrimination, there would have been nothing to arbitrate, for on this score the parties were not in controversy. If the company had at that time construed the collective bargaining agreement as the court now does, they would not have agreed to arbitration. The grievance submitted by employee Arrowood stated: "The company unjustly discharged me, for letting a lap run through." His complaint was that "letting a lap run through" was not just cause for discharge. This is the issue the company agreed to arbitrate and this issue the arbitrator decided. The written stipulation for arbitration, signed by both the company and union, provided, under the heading "Mutually approved issue of arbitration," as follows:

"Under the terms of the contract, and within the limits of those terms, including the restrictions on the power of the Arbitrator, does Grievance No. 157 allege, and has the Union proved, a violation of the Contract. If so, and within the same limitations, what should be the remedy?"

When an arbitrator decides the very issue submitted to him, how can one of the parties later be heard to say that the arbitrator has exceeded the scope of the submission?[4]

2. Apart from the fact that the particular question of interpretation involved here was expressly submitted to the arbitrator, and thus, under the general arbitration law and under federal labor law, his construction should be binding, I think that the contract itself

is unmistakably clear in making this grievance one for arbitration.

Preliminarily, it is to be noted that the first clause in the collective bargaining agreement pertaining to grievances and leading to arbitration is quite broad in range. Article VI, section 1, provides: "Should any employee have *any grievance arising from the operation or interpretation of this Agreement* an earnest effort to adjust such grievance satisfactorily to the parties shall be made in the following manner * * *." (Emphasis supplied). Comprehensive also is the first part of Article VII, specifically governing the arbitration procedures:

"Disputes, grievances, or disagreements involving application or interpretation of this agreement other than those affecting revision of the wage schedules attached hereto, workloads or work assignments, not satisfactorily adjusted under the Grievance Procedure set out in the preceding section shall be promptly referred to arbitration under the following procedure * * *."

Plainly enough the grievance here involves the application and interpretation of the agreement and does not fall within one of the above exceptions. Highly pertinent is the observation of the Supreme Court in United Steelworkers of America v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 584–585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409:

" * * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, *particularly where, as here, the exclusion clause is vague and the arbi-*

---

4. York & Cumberland R. R. v. Myers, 1855, 18 How. (59 U.S.) 246, 253, 15 L. Ed. 380; Mutual Benefit Health & Acc. Ass'n v. United Cas. Co., 1 Cir., 1944, 142 F.2d 390, 394 (where it was said: "Whether he correctly interpreted the contract in this particular is immaterial; he decided the very question submitted to him, and the award is binding."); United Steelworkers of America v. Enterprise Wheel & Car Corp., D.C.S.D.W.Va.1958, 168 F.Supp. 308, 310, reversed in part by this court, 4 Cir., 269 F.2d 327, but the decision of the District Court was reinstated by the Supreme Court, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

*tration clause quite broad."* (Emphasis supplied).

This language would appear to control the case at hand.

The union maintained, and the arbitrator agreed, that the contract recognizes two types of "just cause," one being just cause for discharge and the other just cause for lesser disciplinary action. It is contended that when an employee has committed an offense, whether this amounts to just cause for discharge or only just cause for a milder form of discipline may be made a grievance subject to arbitration. None of the provisions of the contract is inconsistent with this interpretation. In fact, some of the provisions confirm this construction. Article IV, section 2, of the agreement states:

"In all cases of discharge or discipline, the Company will promptly present a written statement to the employee or employees involved giving the cause of the discharge or discipline. The employee or the Union shall have the right to make such matter a grievance, subject to the grievance procedure of this Agreement * * *."

Section 3 of the same article provides:

"Should it be determined that any employee was disciplined or discharged without just cause, such employee shall be restored to his former status provided, however, that no arbitrator may award back pay for a period exceeding ninety (90) days * * *."

These sections pointedly make the question of what constitutes just cause for discharge the subject of arbitration.

Nor do the contract provisions stressed by the company clash with the arbitrator's interpretation. Both the company's argument and the court's opinion chiefly rely on Article III of the collective bargaining agreement, titled "Management Rights". This article states:

"It is agreed that, *except as expressly limited or modified in this Agreement,* the Company has the right of management. This includes, among other things, the right to plan, direct, control, increase, decrease or discontinue operations; to change machinery or type of products, or demote employees subject to just cause, *and to discipline or discharge employees for just cause;* to add to or reduce shifts and working forces; to adopt working and safety rules; to assign work in accordance with the needs of the job; to remove and install machinery, appliances, and types of products; to introduce new and improved production methods or facilities; to remove its plant to another location, or to close or liquidate its plant and to sell or otherwise dispose of any of its products; it is recognized further that all rights heretofore exercised by or inherent in the Management, and not expressly contracted away by the terms of this Agreement are retained solely by the Management. *Any action by the Company under this Section may be made the subject of collective bargaining and grievance procedure, up to but not including arbitration, unless as otherwise hereinafter expressly provided in this Agreement.* It is expressly agreed, however, that should the Company change existing work rules, that such changes are subject to the grievance and arbitration procedure under this Agreement." (Emphasis supplied).

The above provision reserves several different prerogatives of management and, as to all of them, provides that their exercise by management shall not be the subject of arbitration. One of these is the right "to discipline or discharge employees for just cause." This clause expressly recognizes two sanctions, one being "discipline" and the other "discharge." It does not define what constitutes "just cause" for either. Perhaps the intent of Article III is, as the majority construes it, to leave it to management to say what is just cause for either discipline or discharge. On the other

hand, it may well mean that, if an employee is aggrieved by his discharge, then only after it has been determined that management has just cause to *discharge* rather than *discipline* the employee, will management have the unfettered right to enforce this action without interference by arbitration.

Furthermore Article III must be related to Article IV which in terms constrains management to discharge "*only* for just cause." Article III contemplates that it may be "limited or modified" by other provisions of the contract. Additionally, the broad general clause opening management rights to the grievance procedure "*but not including arbitration*" also is qualified by the language, "unless as otherwise hereinafter expressly provided in this Agreement." Article IV, section 2, as previously pointed out, explicitly gives employees the right to make matters of discharge a grievance, subject to the grievance procedure. The very next section, section 3 of Article IV, specifically contemplates that the question of whether an "employee was disciplined or discharged without just cause" can be for an arbitrator, for it limits the amount of back pay an *arbitrator* may award in such a situation. This provision would be completely inappropriate if the intention were to preclude arbitration. Even if Article III, standing alone, would be open to the interpretation the company puts upon it, that article itself states that it may be later modified or qualified, and it is in fact so qualified by Article IV.

In addition, see the discussion of this type of "right of management" clause in United Steelworkers of America v. Warrior & Gulf Nav. Co., supra.[5]

3. Moreover, should it be thought that the contract does not with absolute perspicuity make Arrowood's grievance a subject of arbitration, it is still for the arbitrator to interpret the contract. It is not for the employer acting unilaterally, nor even for this court. The court goes to an unwarranted length when it construes the arbitration procedure as reserving to the employer an industrial absolutism over the employees, subjecting them to discharge under any circumstances without opportunity for review, mitigation or redress. It is no answer to say there was no discrimination. The absence of discrimination in the enforcement of an unjust penalty would not make it just. Whether there was just cause for discharge, is still for the arbitrator. The court unjustifiably trespasses upon the arbitrator's exclusive function when it substitutes its more restrictive view of arbitrability for that adopted by him in unquestioned good faith as the chosen interpreter of the contract.

Unless the collective bargaining agreement is so absolutely plain as to leave no room for doubt, the arbitrator's view of the agreement's intent must prevail. He is the one empowered to resolve ambiguities. This is the principal point, repeatedly stressed, in the Supreme Court opinions. In United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, it was emphatically stated:

" * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining

5. In the course of its discussion of such a clause, the Court pointed out, 363 U.S. at page 584, 80 S.Ct. at page 1353:
   " 'Strictly a function of management' might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception. Every grievance in a sense involves a claim that management has violated some provision of the agreement.
   "Accordingly, 'strictly a function of management' must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion."

whether the party seeking arbitration is making a claim which on its face is governed by the contract. *Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.* In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." (Emphasis supplied).

And again in the same case, 363 U.S. at page 569, 80 S.Ct. at page 1347:

" * * * When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."

In the Warrior case, supra at pages 582–583, 80 S.Ct. at page 1357:

" * * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

Finally, in United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424:

" * * * [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

Never has the Supreme Court prescribed a guide more clearly or with more positiveness.[6] Yet, the court's decision in the present case does precisely what the Supreme Court has prohibited.

4. The second reason advanced for upsetting this labor arbitration award is that the arbitrator considered improper evidence. He found that the company was partly to blame for Arrowood's "offense" because it had failed to furnish proper instructions and supervision to the machine operators. In making this finding, the arbitrator partly relied on findings of another arbitrator in an arbitration proceeding *involving this same defendant and the same issue.* The majority assert that this violated the terms of the submission, as the arbitrator did not "confine himself strictly to the facts submitted in the hearing." However, a reading of the arbitrator's opinion in the instant case discloses that this whole matter, including the findings in the other arbitration proceeding and the failure of the defendant to properly instruct, was evidence submitted to him at this hearing. The arbitrator concluded his discussion of this phase of the case

6. The principle that the arbitrator's construction of the contract is binding, when construction is a necessary part of the question to be arbitrated, has long been a rule of arbitration law, recognized previously by this court and others long before the three above Supreme Court cases.

Judge Parker, speaking for this court in United Fuel Gas Co. v. Columbian Fuel Corporation, 4 Cir., 1948, 165 F.2d 746, 751, pointed out:

" * * * We cannot say that the arbitrators misinterpreted the contract or that they considered improper evidence in making their award; but, had they done so, this would not vitiate the award."

And in Mutual Benefit Health & Acc. Ass'n v. United Cas. Co., 1 Cir., 1944, 142 F.2d 390, 395, Judge Magruder stated:

"However, as previously indicated, it is not necessary for us now to decide whether the arbitrator made a mistake in the interpretation he put upon the contract. It is enough that under the terms of the submission he necessarily had to interpret the contract in order to decide the dispute referred to him, and that his award, made in good faith, within the scope of his authority, is not open to judicial review."

by saying: "It was brought out *at the hearing* that such recommended program of instruction has not yet been instituted." (Emphasis supplied). It is not at all evident from this record that the arbitrator considered inadmissible evidence.

However, assuming that improper evidence was taken into account by the arbitrator, this would not vitiate his award. Burchell v. Marsh et al., 1854, 17 How. (58 U.S.) 344, 349–350, 15 L.Ed. 96;[7] United Fuel Gas Co. v. Columbian Fuel Corporation, 4 Cir., 1948, 165 F.2d 746. In addition, "[a]rbitrators have no obligation to the court to give their reasons for an award." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra at page 598, 80 S.Ct. at page 1361. Since an arbitrator need give no reasons, it would seem to follow that his award cannot be thrust aside because he gave an "improper" reason. See also the Court's discussion in United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, of the wide range of matters an arbitrator may consider.

It has always been a cardinal principle, with respect to court review of arbitration awards, that every presumption is in favor of the award's validity and that the person attacking an award has the burden of showing that the arbitrator exceeded his authority.[8] Where the arbitrator decided the only issue submitted to him, one that certainly concerned an employee's grievance, and language of the contract seems expressly to make this a question for arbitration, I am at a loss to understand how the defendant has overcome the presumption of validity and met its burden of demonstrating the invalidity of the award.

The District Court should have ordered the defendant to comply with the arbitration award. I would reverse.

---

7. In Burchell, the leading case in the field of arbitration law, the Court held, 17 How. (58 U.S.) at page 350: "But it cannot be inferred that the arbitrators went beyond the submission, merely because they may have admitted illegal evidence about the subject-matter of it." See also Judge Parker's language quoted in footnote 6, supra.

8. Burchell v. Marsh et al., 1854, 17 How. (58 U.S.) 344, 350, 15 L.Ed. 96; Firemen's Fund Ins. Co., v. Flint Hosiery Mills, Inc., 4 Cir., 1935, 74 F.2d 533, 536; American Almond Prod. Co. v. Consolidated Pecan Sales Co., 2 Cir., 1944, 144 F.2d 448, 450, 154 A.L.R. 1205.