**UNITED STATES POSTAL SERVICE, Plaintiff,**

v.

**NATIONAL RURAL LETTER CARRIERS ASSOCIATION, Defendant.**

**No. C80–1613.**

United States District Court, N. D. Ohio, E. D.

March 15, 1982.

---

and the United States Postal Service (USPS), an arbitrator has ruled that a rural mail route in Hope, North Dakota be transferred from an independent contractor to a postal letter carrier. The USPS has appealed, claiming that the arbitrator exceeded his authority.

This Court has jurisdiction to consider this matter pursuant to 39 U.S.C. §§ 409(a), 1208(b); 9 U.S.C. § 10.

Both parties have moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. The Court finds that there is no genuine dispute as to any material fact and that the USPS is entitled to a judgment as a matter of law.

As shown by the arbitrator's award and by the record before the arbitrator, the facts are as follows.

The town of Hope is located in east central North Dakota, about 100 miles northwest from Fargo and near the Maple River, a tributary of the Missouri River. The Postal Service's office in Hope serves patrons in the nearby area of Luverne. One of the delivery routes in Luverne was served by a letter carrier employed by the USPS who had served the subject route for 27 consecutive years. The letter carrier retired in September, 1978.

Upon learning of the carrier's impending retirement, and in accordance with postal regulations, the local postmaster evaluated the route to determine whether it should be converted to a contract or "star route." If converted, the "star" route would no longer be served by a postal service employee, but rather by an independent contractor. The Association's interest in the matter arises because any independent contractor would not be an Association member.

The local postmaster determined that the route in question was 128.24 miles in length, and that it served 127 families. The arbitrator found these determinations to be accurate. Because the route thus has less than one family per mile, a threshold standard for conversion, the postmaster then performed a cost analysis. He found that the cost of the salary and fringe benefits

Marcia R. Johnson, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

William B. Peer, National Ass'n of Letter Carriers, Washington, D. C., for defendant.

MEMORANDUM

BEN C. GREEN, Senior District Judge:

In this dispute between the National Rural Letter Carriers Association (Association)

for the carrier, plus the expense incurred in the use of a half-ton pickup truck on the largely unpaved route, approximated $25,-524 per annum. He projected that service of the route by a contract carrier, using the most recent contract rate, would be $13,869. The postmaster thus found that conversion would yield an approximate $11,655 in annual savings.

The postmaster made these disclosures to his superiors, appending, however, his recommendation that the route remain a letter carrier route because he felt a letter carrier would provide better service. He was overruled. Bids were solicited, and a contract was let. The substitute carrier who had been serving the route was relieved of his duties, and a contract carrier began service in March, 1978.

The Association filed a grievance with the USPS, challenging the determination to convert. The grievance was denied at each step, and the matter proceeded to arbitration.

After a hearing, the arbitrator granted a provisional award to the Association. After analyzing the relevant postal regulations which the parties agreed were part of their contract, the arbitrator found that the USPS could not convert a rural route from a letter carrier to contract delivery unless the public interest was thereby served. The arbitrator found that while cost savings were a proper factor upon which the USPS could base a decision, the level and quality of service were also prime concerns. He found that the USPS had properly converted the route, but that customer complaints required a redetermination.

At the arbitral hearing, the arbitrator admitted, over objection, the testimony of two patrons along the subject route. The patrons testified that the mail service they received deteriorated substantially after conversion to contract delivery. They complained that mail was late, unreliable, and was frequently misdelivered. One witness testified that the people along the rural route made a point of attending church each Sunday so that they could exchange misdelivered mail with their neighbors.

The witnesses also presented a petition protesting the quality of service, signed by 66 patrons along the route. The arbitrator admitted the petition into evidence, over objection, "for whatever it is worth."

In his provisional award, the arbitrator ordered the USPS to investigate the complaints from customers, to determine whether the complaints were valid and whether the public interest was being served, and to redetermine whether the route should be served by contract delivery. The arbitrator retained jurisdiction in the event the parties disagreed after such an evaluation and redetermination.

The parties did disagree and returned the matter to the arbitrator. The arbitrator heard more evidence and issued a final, or supplemental, award, again in favor of the Association.

In the supplemental award, the arbitrator noted that the customer service representative of the USPS who conducted the investigation found that half the families on the route continued to have complaints about service in late 1979. The final report to the arbitrator from the USPS was prepared by the customer service director in Fargo, who noted that 14 of the 120 families on the route said their mail continued to be misdelivered, that the erratic delivery schedule continued, that an "unacceptable" vehicle was the cause of the erratic delivery, and that there was a general deterioration of mail service on the route. The Fargo director of customer services concluded, however, that the USPS was providing "adequate" service via the contract carrier, that the cost savings were substantial, and that therefore the public interest was served. The USPS declined to convert the route back to service by letter carrier.

Without disturbing his earlier finding that the route was correctly converted, the arbitrator found that the poor service on the route after conversion did not serve the public interest. He directed the USPS to reconvert the route to letter carrier service at the earliest time possible "without financial loss" to the USPS. This appeal followed.

The parties agree, generally, as to the law to be applied in this case. Arbitration is the preferred method of resolving labor disputes. To that end, judicial review of an arbitrator's decision is very limited. A court may not review an arbitrator's factual findings or decisions on the merits. It may only inquire into the arbitrator's "authority to make the award he made." *United Steelworkers v. Warrior & Gulf Mfg. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1965). Fundamental to deference to an arbitrator, however, is the arbitrator's adherence to the limits of his authority. In *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1965), the Court held:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

There are, of course, numerous ways in which an arbitrator may exceed his authority, but only two concern us here. The first is to exceed the limits of the issues submitted by the parties. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers' Union,* 611 F.2d 580 (C.A. 5, 1980); *Retail Store Employees Union, Local 782 v. Sav-on Groceries,* 508 F.2d 500, 502–503 (C.A. 10, 1975); *Textile Workers Union of American v. American Thread Co.,* 291 F.2d 894, 897 (C.A. 4, 1961). The second way is to ignore relevant provisions of the contract between the parties. *Detroit Coil Co. v. International Association of Machinists and Aerospace Workers,* 594 F.2d 575, 579 (C.A.

6, 1979); *General Drivers, Warehousemen & Helpers, Local 89 v. Hays and Nicouln, Inc.,* 594 F.2d 1093 (C.A. 6, 1979).

In this case, the arbitrator exceeded his authority in both ways, and his award therefore cannot be enforced.

First, the arbitrator went outside the issues submitted by the parties. Article 15.-4.D of the collective bargaining contract between the parties provides that issues to be arbitrated must be plainly and specifically set forth in the demand for arbitration:

> [A] grievance ... must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided [by the arbitrator], and the contention of the Union.

In its letter demanding arbitration, Joint Exhibit 8, the Association characterized the issue to be arbitrated as:

> ... the conversion of the rural route to contract (star route) delivery. The Union's position is that this route does not meet the criteria for conversion to contract delivery.

The arbitrator found that the postal route in question met the criteria for conversion to contract delivery. To that point, the arbitrator was within the limits of his authority. The arbitrator went on, however, to consider an issue not submitted to him, the issue of customer dissatisfaction. This was outside of his jurisdiction. Under the terms of the contract, the grievance itself defined the limits of the arbitrator's authority. The grievance limited the issue to be decided to whether the route met the criteria for conversion, and the arbitrator thus lacked the jurisdiction to consider other issues.[1]

Second, the arbitrator erred by ignoring pertinent portions of the contract. Article III of the labor agreement between the parties contains a typical "management's rights" clause which reserves to the USPS the right:

---

1. The Association claims here that the USPS is estopped to raise this issue now, alleging that the USPS did not object to introduction of evidence of customer dissatisfaction. An examination of the record, however, shows that the USPS both objected to such testimony, and unsuccessfully moved to have it stricken as irrelevant. Tr. 64, 68. The Association's claim of estoppel is without merit.

[T]o determine the methods, means, and personnel by which [its] operations are to be conducted.

This clause allows the USPS to change any route from a letter carrier to contract delivery, limited only by its own regulations.

The arbitrator correctly found that the applicable USPS regulations required, as a condition precedent to conversion, findings by the USPS that (a) less than one family (or business with regular delivery) existed per mile along the route, as determined by actual survey taken within a reasonable time of the finding, (b) the route has become vacant (e.g., the carrier has retired), and (c) the public interest will be served, due consideration being given to cost. These findings find their essence in the USPS regulations, specifically Instruction Letter 605–T–117, Joint Exhibit 3.

But the arbitrator incorrectly found that valid customer complaints which arise after a conversion must require the USPS to make a redetermination of the "public interest." While the USPS is certainly not precluded from assuming that burden, it has chosen, and within its authority under the management rightsclause, not to do so.

This Court is cognizant that it is limited in its jurisdiction in reviewing the award made by an arbitrator. The Court is firmly convinced, however, that in this case the arbitrator exceeded his authority and his award does not derive its essence from the collective bargaining agreement between the parties.

Neither party has sought specific relief in their respective motions for summary judgment. The Court will consider the Association's motion as one to compel enforcement of the award. So considered, the motion will, in a separate order, be denied.