**DISTRICT 28, UNITED MINE WORKERS OF AMERICA and Local Union 9967, Plaintiffs,**

v.

**LOWLANDS COAL CORPORATION, Defendant.**

Civ. A. No. 85-0203-A.

United States District Court, W.D. Virginia, Abingdon Division.

Aug. 13, 1986.

Gerald F. Sharp, Castlewood, Va., for plaintiffs.

James P. Jones, Bristol, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The plaintiffs, District 28, United Mine Workers of America and Local Union 9967 (the union) instituted this action seeking to have vacated and remanded an arbitration decision of panel arbitrator L.D. May (the arbitrator) that was entered on April 19, 1985 against grievant Larry Branham (Branham), a union member and former employee of the defendant, Lowlands Coal Corporation (the company). Jurisdiction is contended under § 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185. The action is now before the court on defendant's motion for summary judgment and plaintiffs' cross motion for summary judgment.

## I.

## BACKGROUND

The following facts are undisputed. At all times relevant to this action, both the union and the company were bound by the terms of the successive wage agreements entitled "The National Bituminous Coal Wage Agreement of 1981 and 1984" (the Wage Agreement). A four-step grievance and arbitration procedure for the settlement of disputes between union member employees and management is set forth in the Wage Agreement in Article XXIII. On or about January 14, 1985, Branham, who as a bargaining unit employee of the company had been laid off, filed a grievance against the company that involved his seniority and recall rights under the Wage Agreement. More specifically, Branham's grievance contained allegations that:

> The Company had laid the grievant off and not recalled him in accordance with Article XVII of the Contract. They have called back an employee junior to the grievant for a job that the grievant has listed on his panel and has the ability to perform. Therefore, the grievant is asking to be put back to work and paid for all lost time due to this.

The company subsequently denied the grievance at each step of the grievance

procedure, whereupon the company and the union submitted the grievance for arbitration. As reflected in the first-step grievance form, the company took the position that it had not violated the Wage Agreement based on the contention that Branham was not qualified to perform the subject job. Most significantly, the company, as evidenced by both its answers to interrogatories and response to request for admissions, never raised at any point in the grievance and arbitration proceedings an issue of timeliness as a defense against the grievance. Following submission of Branham's grievance for arbitration, the arbitrator issued a decision wherein he found that "although the Company had not raised the question of the grievance being untimely filed, the facts as developed in this case indicate that this is what occurred." Upon this finding, the arbitrator denied the grievance without reaching a decision on the merits.

In light of these facts, the union instituted the present action on the claim that the arbitrator decided the grievance on an issue not properly disclosed between the parties during the grievance procedure as required under the terms of the Wage Agreement, and that his decision therefore exceeded the parties' submission to him. The union seeks to have as relief the arbitration decision vacated and the case remanded in order that the parties can present evidence and argument to the arbitrator on the issue of timeliness.

## II.

### MOTIONS FOR SUMMARY JUDGMENT

Both the company and the union have moved for summary judgment on the claim raised in the union's complaint and have submitted supporting memoranda, so the case is now ripe for decision on the parties' respective motions. The company makes a brief, two-part argument in support of its motion for summary judgment. First, it argues that the facts upon which the arbitrator made his finding of untimeliness had been properly presented to him by the parties pursuant to Article XXIII, section (e)

of the Wage Agreement, which provides in part:

At all steps of the complaint and grievance procedure, the grievant and the Union representatives shall disclose to the company representatives a full statement of the facts and the provisions of the Agreement relied upon by them. In the same manner, the company representatives shall disclose all the facts relied upon by the company.

The company then proceeds to argue that from the facts presented the arbitrator simply decided a question of procedure, which is solely within the power of the arbitrator to decide. In support of this latter contention, the company cites *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Consequently, this court, it is ultimately contended, is without jurisdiction to review the arbitrator's decision. The union, on the other hand, essentially argues that Article XXIII section (e), as interpreted under the common law of the shop, specifically Arbitration Review Board Decisions 78–9 and 78–10, establishes that the issue the arbitrator decides, and not just the facts upon which he bases his decision, must first be disclosed and processed through the grievance procedure before reaching arbitration. Otherwise, the issue is outside the scope of the parties' submission leaving the arbitrator without jurisdiction to decide the issue. The union thus contends that the issue of timeliness in the present case, having not been raised by either party during the grievance process, was not a proper issue for the arbitrator to decide.

After careful review of the Arbitration Review Board decisions relied upon by the union, as well as a review of general principles of federal labor law governing arbitration cases, the court concludes that the issue of timeliness was not properly before the arbitrator, and that the arbitrator, in basing his decision on a determination of that issue, exceeded his authority.

A cursory reading of the portion of Article XXIII, section (e) that the company relies upon in making its argument would leave one with the impression that all the

company is required to do during the grievance process is disclose facts upon which it relies. This provision of the Wage Agreement, however, when applied in its entirety, demands more of the company than the simple disclosure of facts. Article XXIII, section (e), which is entitled "Earnest Effort to Resolve Disputes," begins with the directive that "[a]n earnest effort shall be made to settle disputes [between the grievant and the company] at the earliest practicable time."[1] The full meaning of this directive as it relates to the provision's disclosure requirements was fleshed out by the Arbitration Review Board (the Board) in Decision 78–9, decided on June 27, 1979.[2] The claim being made in the case there decided was that one of the parties involved in the grievance process had submitted an issue to arbitration in violation of Article XXIII, section (e). As framed by the Board, the question presented for Board decision was what issue does an arbitrator have the authority to consider in light of what has transpired in form or in substance in the course of the grievance procedure. Arbitration Review Board Decision 78–9, 13 (June 27, 1979).

The Board begins its analysis in Decision 78–9 by reviewing the general principles of arbitration adopted by the parties to the Wage Agreement, as reflected by the terms of that agreement, and then summarizes the principles reviewed as follows:

> [T]he general principles in arbitration require that the issues to be decided by an arbitrator must be those which the parties have presented to each other, have discussed with respect to both fact and contract application, and on which they

have been unable to agree in the course of the grievance procedure prior to referral to arbitration.

*Id.* at 19. Addressing specifically Article XXIII section (e), the Board explains that the provision is "a procedural regulation aimed at directing the manner and method by which the parties are expected to deal with each other in the grievance procedure." *Id.* at 13. What transpires from the parties' dealings at the various steps of the grievance procedure will, in turn, regulate what can be submitted to arbitration. *Id.* at 24 As to the particular manner and method of dealing required under the provision, and the effect the parties' dealings have on the submission of issues to arbitration, the Board states:

> It is manifest in the provision that the parties intend that only issues of which 'earnest efforts' and disclosures have been made may be submitted to arbitration. Thus the provision is ... intended to make sure that issues are to be raised, identified, clarified, discussed and negotiated to bona fide disagreement before they are given to an arbitrator. In that light, full disclosure, while not intended to be a weapon, is nevertheless to be a stated standard by which an arbitrator makes a determination whether the parties have tried to make the grievance procedure work. If they have not so tried, then the issues are not 'matured,' and are not properly submitted to the arbitrator.

*Id.* The Board describes the required "earnest efforts" referred to above to include by the end of step three of the grievance procedure:

1. The full text of Article XXIII, section (e) provides as follows:

> An earnest effort shall be made to settle differences at the earliest practicable time. Where an Employee makes a complaint during work time, the foreman shall, if requested to do so, and if possible, consistent with continuous production, discuss the matter briefly on the spot.
> At all steps of the complaint and grievance procedure, the grievant and the Union representatives shall disclose to the company representatives a full statement of the facts and the provisions of the Agreement relied upon by them. In the same manner, the company

> representatives shall disclose all the facts relied upon by the company.

2. The decisions of the Arbitration Review Board, which were utilized in years past under the Wage Agreement, are precedent setting and as much a part of the Wage Agreement as the contract itself. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Norfolk Shipbuilding and Drydock Corp. v. Local No. 684*, 671 F.2d 797 (4th Cir.1982); *Clinchfield Coal Co. v. District 28, United Mine Workers of America*, 556 F.Supp. 522 (W.D.Va.1983), *aff'd*, 720 F.2d 1365 (4th Cir.1983).

**1304**

a. The full disclosure of all the facts and expected evidence each side relies upon in support of its position;

b. The full disclosure of the contractual basis for any claim, as well as the full disclosure of any countering view of proper contractual provision or application;

c. Full, open, frank and thorough discussion and negotiation of the issues of fact and contract made in an effort to settle or agree, or to find areas of partial agreement so that when overall agreement or settlement cannot be reached and the matter is referred to an arbitrator, 'each side should be in the know of what the other will be relying on in arbitration' with respect to facts and contract; and both parties know where their disagreement lies, and why and what will be submitted to the arbitrator....

*Id.* at 22, 23.

Consequently, in a case involving a claim that a particular issue is not properly before the arbitrator for decision, the "major question" to be decided, the Board explains, is:

[W]hether there has been a sufficient discussion of the facts, circumstances, and general contract application that the opposing party has not been misled by misstatement or failure to state particular contract language. Obviously, there is initial responsibility or burden placed on the grievant and the Union to state sufficient facts and to cite relevant contract provisions to express the nature of its claim of violation of contract and to frame the issue to be settled. But there is a corresponding obligation on the part of the Employer to enter into and participate in the earnest effort to settle the dispute, as well. One cannot sit back, refuse to engage in an exchange, or, having entered into an exchange of views, be so deliberately obtuse as to refuse to understand and deal with anything except the literal and explicit article, and section which may have been inaccurately stated, and is clearly not what is in issue in the exchanges which

are going on. No one is required to make the other fellow's case, of course, and no one is required to be clairvoyant, but both sides are required by the 'earnest effort' language to act in good faith to try to understand and deal with what is the problem.

*Id.* at 24, 25. If the answer to the question is that the issue of claim or defense was not properly disclosed and processed through the grievance procedure, then the arbitrator is without jurisdiction to decide that issue "since the arbitrator is charged to decide only issues which have been submitted, discussed and negotiated through the steps of the grievance procedure and on which the parties themselves have been unable to achieve agreement or settlement." *Id.* at 4.

■ Based on the authority provided in Board Decision 78–9, the court cannot take seriously in the case at bar the company's implied contention that the arbitrator is free to decide any issue involving procedure as long as the decision is based on facts properly submitted, though concededly submitted only in regards to an issue on the merits. Article XXIII, section (e), as interpreted by the common law of the shop, makes no distinction between substantive and procedural issues in its directive to all parties for full disclosure of both facts and contractual provisions supporting any claim or countering view, including defenses; and, as explained above, what has not legitimately been made an issue under this standard by one or more of the parties during negotiations through the grievance process cannot be the subject of an arbitration decision.

At times, the arbitrator may have a difficult time determining what issue or issues are to be decided, given the fact that, unlike in a court of law where there are formal pleadings presenting the issues for decision, the arbitrator must determine the arbitral issues based on informal writings, exchanges and discussions that have occurred throughout the prior steps of the grievance procedure. *Id.* at 17. However, on the facts of the present case, there can be no question that the arbitrator decided an issue, i.e. the timeliness of the griev-

ance, that was outside the scope of the parties' submission where the arbitrator, himself, even states in his opinion that the parties did not raise the issue.

Furthermore, the company has taken out of context the holding in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), as cited in support of its argument that the procedural question that the arbitrator decided based on the facts before him was a question solely within his power to decide. The present case, as by now should be clear, has involved a question going to the scope of the parties' submission of issues to arbitration. In other words, the question was raised as to what issue or issues was the arbitrator properly to decide in this particular case. *Wiley* and its progeny of lower court decisions, on the other hand, address the different question of whether parties to particular collective bargaining agreements have a duty to arbitrate procedural issues under the express or implied terms of the respective agreements.[3] By comparison, in such a case, the question is not whether the parties properly raised the procedural issue in order that it be decided by an arbitrator, but whether the arbitrator could decide the issue even if otherwise properly raised. *See Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir.1985) (where appellant argued that the procedural dispute as to timeliness of a hearing on a grievance was nonarbitrable under the collective bargaining agreement).[4]

■ The company has also contended that the court is without jurisdiction to review the arbitrator's decision. The Fourth Circuit, in *International Chemical Workers Union Local No. 566 v. Mobay Chemical Corp.*, 755 F.2d 1107 (4th Cir. 1985), recently addressed the issue of the federal district court's jurisdiction to review an arbitration decision where one of the parties was claiming that the arbitrator decided matters outside the issues submitted for arbitration. The court there held that Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, clearly conferred jurisdiction on the district court to hear such a claim and to vacate the arbitration award if such relief were appropriate. *Id.* at 1109 (citing *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and *Textile Workers Union v. American Thread Co.*, 291 F.2d 894 (4th Cir.1961)). As the court recognized, "the parties, not the arbitrator, must define the issues," with the parties' submission becoming " 'the source and limit' of the arbitrator's power." *Id.* at 1110 (quoting *Textile Workers Union*, 291 F.2d at 898).

The court will thus vacate the arbitrator's decision, having found in the present case that the arbitrator decided a matter outside the issues submitted for arbitration. It goes without question, however, at this point in the case, that the company is raising the issue of timeliness of the subject grievance. Based on further authority from Board Decision 78–9, upon reconsideration the arbitrator will not necessarily have to reach a decision on the merits of the case without any further consideration of the timeliness issue. As the Board explains, if a party raises an issue at the arbitration stage that has not been properly submitted, and "the arbitrator considers that the issue would have sufficient impact

---

**3.** The U.S. Supreme Court held in *Wiley* that where parties are obligated to arbitrate certain substantive matters under the collective bargaining agreement, any attendant procedural matters are subject to arbitration as well. *Wiley*, 376 U.S. at 557, 84 S.Ct. at 918. This is, of course, assuming that there is no "positive assurance" in the language of the collective bargaining agreement that a dispute over procedural matters is non-arbitrable. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *Denhardt v. Trailways, Inc.*, 767 F.2d 687, 689 (10th Cir.1985).

**4.** Since the parties herein and the arbitrator have treated the timeliness question as a procedural issue, this court has, for the purposes of this opinion, decided the case on this premise. However, there is analogous authority that timeliness issues are substantive issues, rather than procedural, i.e. in the application of *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under the *Erie* doctrine, when procedure is intimately bound up with a right or obligation, it is treated as substantive law and thus state law applies. *Karrara v. Town of Tazewell*, 450 F.Supp. 169 (W.D.Va. 1978).

on his decision of the grievance if otherwise properly submitted as to make a difference, then he may remand the matter back to the parties at step 3 for discussion and consideration and return to arbitration if agreement still cannot be reached." *Id.* at 26.

Therefore, in conclusion, the plaintiffs' motion for summary judgment is granted and the defendant's motion for summary judgment is denied. The arbitrator's decision in this case is, accordingly, vacated and the case remanded for his further consideration under the discretionary standard set forth above and in accordance with the other principles governing the submission of issues to arbitration embodied in Article XXIII, section (e) of the Wage Agreement, as interpreted under the common law of the shop. Furthermore, since the court has made a final disposition of the case, the case will be stricken from the court's docket.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.